# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**MARK WILLIAM TOWNSEND,**                              **Civil Action No:**

               **Plaintiff,**

**vs.**                                                                    **JURY TRIAL DEMANDED**

**UNITED STATES OF AMERICA**
**THE HONORABLE LORETTA LYNCH**
     **ATTORNEY GENERAL OF THE UNITED STATES**
     **Department of Justice**
     **Room B-103**
     **950 Pennsylvania Avenue, N.W.**
     **Washington, D.C. 20530**

**The UNITED STATES ENVIRONMENTAL**
     **PROTECTION AGENCY**
     **1200 Pennsylvania Avenue, N.W.**
     **Washington, D.C. 20460**

**The UNITED STATES DEPARTMENT OF JUSTICE**
     **950 Pennsylvania Avenue, N.W.**
     **Washington, D.C. 20530**

**THE HONORABLE REGINA McCARTHY**
**(in her official and individual capacities)**
     **ADMINISTRATOR**
     **ENVIRONMENTAL PROTECTION AGENCY,**
     **1200 Pennsylvania Avenue, N.W.**
     **Washington, D.C. 20460**

     **100 Pond Street, Apartment 2**
     **Jamaica Plain, MA 02130**

**And the Following Employees and Former Employees of the**
**UNITED STATES ENVIRONMENTAL**

**PROTECTION AGENCY (in their official and**
    **individual capacities)**

**THE HONORABLE ROBERT PERCIASEPE**
    **In his official capacity as DEPUTY ADMINISTRATOR (retired)**
    **ENVIRONMENTAL PROTECTION AGENCY**
    **1200 Pennsylvania Avenue, N.W.**
    **Washington, D.C. 20460**

    **646 5th Street, N.E.**
    **Washington, D.C. 20002**

**JAMES JONES**
    **In his official capacity as ASSISTANT ADMINISTRATOR FOR THE OFFICE OF**
    **CHEMICAL SAFETY AND POLLUTION PREVENTION**
    **ENVIRONMENTAL PROTECTION AGENCY**
    **1200 Pennsylvania Avenue, N.W.**
    **Washington, D.C. 20460**

**LOUISE WISE**
    **In her official capacity as DEPUTY ASSISTANT ADMINISTRATOR FOR THE**
    **OFFICE OF CHEMICAL SAFETY AND POLLUTION PREVENTION**
    **ENVIRONMENTAL PROTECTION AGENCY**
    **1200 Pennsylvania Avenue, N.W.**
    **Washington, D.C. 20460**

    **3517 Rittenhouse Street, N.W.**
    **Washington, D.C. 20015**

**MARK KAMINSKY**
    **SPECIAL AGENT, OFFICE OF INSPECTOR GENERAL**
    **ENVIRONMENTAL PROTECTION AGENCY**
    **1200 Pennsylvania Avenue, N.W.**
    **Washington, D.C. 20460**

    **5508 Akridge Court**
    **Fairfax, VA 22032**

**THE HONORABLE ARTHUR ELKINS**
    **INSPECTOR GENERAL**
    **ENVIRONMENTAL PROTECTION AGENCY**
    **1200 Pennsylvania Avenue, N.W.**

Washington, D.C. 20460

3203 Dunwood Ridge Terrace
Bowie, MD 20721

MARTHA MONELL
    DEPUTY DIRECTOR OF MANAGEMENT
    OFFICE OF PESTICIDES PROGRAM
    ENVIRONMENTAL PROTECTION AGENCY
    1200 Pennsylvania Avenue, N.W.
    Washington, D.C. 20460

    9013 Saffron Lane
    Silver Spring, MD 20901

And UNKNOWN NAMED OFFICIALS OF THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY (in their official and individual capacities)
    1200 Pennsylvania Avenue, N.W.
    Washington, D.C. 20460

And the Following Employees and Former Employees of the
UNITED STATES DEPARTMENT OF JUSTICE (in their official and
    individual capacities)

THE HONORABLE RONALD MACHEN (resigned)
Former UNITED STATES ATTORNEY FOR
THE DISTRICT OF COLUMBIA
    The United States Attorney's Office for the District of Columbia
    555 4th Street, N.W.
    Washington, D.C. 20530

    13601 Petwyn Court
    Silver Spring, MD 20904

THE HONORABLE VINCENT COHEN, JR.
ACTING UNITED STATES ATTORNEY FOR
THE DISTRICT OF COLUMBIA
    The United States Attorney's Office for the District of Columbia
    555 4th Street, N.W.
    Washington, D.C. 20530

    1604 Upshur Street, N.W.
    Washington, D.C. 20011

**and/or**

**1851 Redwood Terrace, N.W.**
**Washington, D.C. 20012**

**JAMES SMITH, Former ASSISTANT UNITED STATES ATTORNEY (resigned)**
**The United States Attorney's Office for the District of Columbia**
**555 4th Street, N.W.**
**Washington, D.C. 20530**

**And UNKNOWN NAMED OFFICIALS OF THE**
**UNITED STATES DEPARTMENT OF JUSTICE**
**(in their official and individual capacities)**

**The United States Attorney's Office for the District of Columbia**
**555 4th Street, N.W.**
**Washington, D.C. 20530**

**The Department of Justice (Main Justice)**
**950 Pennsylvania Avenue, N.W.**
**Washington, D.C. 20530**

**October 7, 2015**

_____

## COMPLAINT

**(Age, Race and Sex Discrimination and Retaliation in Federal Employment, APA**
**violations, Privacy Act violations and Constitutional violations sounding in Tort)**

## INTRODUCTION

Plaintiff Mark William Townsend ("Plaintiff"), brings this action pursuant to Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*(in particular at 42 U.S.C.

§2000e-16(c)), and 42 U.S.C. §1981a, the Age Discrimination in Employment Act, 29 U.S.C.

§621 et seq. (in particular §633a, relying upon the Civil Service Reform Act (failure to

adjudicate provisions, 5 U.S.C. §7702(e)(1)(B)), 28 U.S.C. §2201 (the Declaratory Judgment

Act), 5 U.S.C. §§ 551-559, including 5 U.S.C. § 552a (the Privacy Act), 5 U.S.C. §§ 701-

706 (relevant provisions of the Administrative Procedure Act), and for numerous Constitutional

violations sounding in Tort.

Plaintiff, by undersigned counsel, herein states his Complaint and Causes of Action

against the United States of America ("United States"); the United States Environmental

Protection Agency ("EPA"); Regina McCarthy, individually and in her official capacity as

Administrator of the United States Environmental Protection Agency ("Administrator

McCarthy"); Robert Perciasepe, individually and in his official capacity as Deputy

Administrator, EPA ("Perciasepe"); James Jones, individually and in his official capacity as

Assistant Administrator for the Office of Chemical Safety and Pollution Prevention, EPA ("Jim

Jones"); Louise Wise, individually and in her official capacity as Deputy Assistant Administrator

for the Office of Chemical Safety and Pollution Prevention, EPA ("Wise"); Martha "Marty"

Monell ("Monell"), currently Deputy Director of Management, Office of Pesticides Program,

EPA, is sued in her individual capacity for the *ad hoc* illegal investigation undertaken upon

instruction from Jim Jones; Mark Kaminsky, individually and in his official capacity as Special

Agent, EPA IG ("Kaminsky"); Arthur Elkins, individually and in his official capacity as EPA

Inspector General ("Inspector General Elkins"); the United States Department of Justice ("DoJ");

Ronald Machen, individually and in his official capacity as United States Attorney for the

District of Columbia, DoJ ("Machen"); Vincent Cohen, Jr., individually and in his official

capacity as both former Principal Assistant United States Attorney for the District of Columbia

and current Acting United States Attorney for the District of Columbia ("Cohen"); James Smith,

individually and in his official capacity as Assistant United States Attorney, DoJ ("Jim Smith");

Unknown Named Officials of the Department of Justice ("Unknown Named DoJ Officials'), individually and in their official capacities; and Unknown Named Officials of the EPA ("Unknown Named EPA Officials'), individually and in their official capacities.

## <u>PROLOGUE</u>

**"Power tends to corrupt and absolute power corrupts absolutely; still more when you add the certainty of corruption by authority."**
- Lord John Dalberg-Acton

**"If the government becomes the lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."**
Justice Louis D. Brandeis, dissenting in *Olmstead v. United States* (1928)

**"What is (What's) Past is Prologue."**
- Aitken, *Future – National Archives I*
- *Shakespeare, The Tempest, Act II, Scene I*

1.      On July 3, 2012, Plaintiff, a superlative middle-manager and scientist then employed by the Environmental Protection Agency ("EPA"), was subject to an unconstitutional interrogation conducted by deeply-biased and outcome-driven agents of the EPA Office of Inspector General ("IG") who subsequently attempted to falsely implicate Plaintiff in a "criminal referral" to the Office of the United States Attorney for the District of Columbia ("USA-DC").  This was to be "Day One" of an ongoing nightmare for Plaintiff, inflicted upon him by those in a position of authority and trust, which has ultimately brought him before this Court to vindicate his rights and remedy the grievous harm done to him by the EPA, IG and the DoJ, as well as those individuals named as defendants above.

## <u>SYNOPSIS AND BRIEF RECITATION OF ISSUES PRESENTED</u>

2.      Plaintiff was targeted for removal, and removed, from federal service based upon his age, race, gender, and retaliation, and is also the victim of two agencies (and several individual malfeasants) seeking to bolster their "anti-corruption" credentials - and in the process using their significant power - by falsely incriminating, conducting illegal internal investigations of, and stigmatizing Plaintiff in violation of his First, Fourth, and Fifth Amendment rights and in support of their attempts to characterize Plaintiff as a "criminal" and their subsequent discriminatory removal action, which included the use of private, privileged information disseminated by DoJ and Kaminsky without consent or statutory exception.

3.      After Plaintiff was accused, then apparently absolved, by DoJ, his employer EPA subjected him to a continuing hostile work environment and disparate treatment based upon age, race and sex - and then terminated his employment utilizing as pretext the very grounds for which the DoJ and Kaminsky had tried (and failed, upon information and belief) to convince a federal grand jury to indict him.  Such insubstantial grounds are founded, upon information and belief, in government false statements and leaked information by an relatively inexperienced investigator and an Assistant United States Attorney who should have known better - both of whom attempted to profit (through enhanced career prospects), upon information and belief, by implicating Plaintiff.

4.      Plaintiff was terminated from government service, intimidated and frightened by EPA threats to delay his essential health and related benefits, burdened by years of legal fees, professionally ostracized and humiliated, and personally defamed – all this, upon information and belief, for following supervisory instructions to accommodate a disabled subordinate, providing protected disclosures to the Congress and the United States Office of Special Counsel ("OSC") concerning widespread EPA time and attendance misfeasance, and pursuing civil rights

claims within EPA when his supervisor "suggested" that he step aside to provide headroom for a younger African-American female now encumbering the position from which Plaintiff was removed.

5.      The powerful agencies named as defendants (DoJ and EPA) have subjected Plaintiff to perhaps the greatest power against the individual citizen that the United States government has - to investigate without restraint.   Plaintiff alleges that the government in this matter has intentionally violated numerous laws and Plaintiff's enumerated (and unenumerated) constitutional rights, intentionally and without any particular regard for anyone or anything.  The agency actions described herein represent, in the opinion of Plaintiff, corruption and misuse of authority.  Where, as here, such power has been combined with denial of due process at various stages of five separate investigations, a particularly onerous form of government malfeasance has resulted.  Then, just at the time Plaintiff believed the procedural errors and constitutional harms could not become more prejudicial to him, the Administrative Judge ("AJ") responsible for hearing Plaintiff's mixed case appeal at the Merit Systems Protection Board ("MSPB") apparently, upon information and belief, took unauthorized leave, resulting in his discrimination claims languishing with no relief in sight, and necessitating this action - the prolonged absence by the AJ only exacerbates what the *Washington Post* on October 6, 2015, described as the MSPB's "lengthy backlog of pending cases and a longer-than-necessary time...to adjudicate them."  Plaintiff must therefore turn to the federal courts, where he is entitled to bring his discrimination claims, and where Article III powers present his only opportunity to obtain a timely, fair and adequate  remedy - particularly in light of the MSPB inability to adjudicate mixed cases, the improper EPA edict to hold Plaintiff's discrimination claims in abeyance, and the unethical obsession of the Government to win at (any and) all costs.

6.      Plaintiff seeks monetary damages under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)("*Bivens*"), against those individuals most clearly and proximately responsible for the constitutional torts to which he was subject and for which a remedy - notwithstanding the above-described remedial scheme - is otherwise unavailable to Plaintiff.

7.      Plaintiff seeks a federal jury trial and judicial enforcement of his discrimination claims from this Court.  These discrimination claims were part of a mixed case appeal pending before the MSPB that neither the MSPB AJ nor the MSPB chose to adjudicate for nearly a year, and related yet distinct discrimination claims which the EPA Office of Civil Rights has improperly placed in abeyance over Plaintiff's objection – thereby providing Plaintiff rights without adequate remedies - as well as the *Bivens* claims, related damages, injunctive relief, and reimbursement of attorney's fees (for constitutional harms) available in law and equity.

8.      Upon information and belief, the MSPB, which must by statute retain jurisdiction of and adjudicate Plaintiff's <u>merit systems claims</u> which were originally (and remain) part of the mixed case.  Regardless, the MSPB appears jurisdictionally precluded from adjudicating and remedying constitutional harms caused by unconstitutional interrogation techniques and related misconduct of the EPA IG Agent who, upon information and belief, provided false statements to the DoJ (later rejected as unreliable), and accompanying DoJ investigatory misconduct and illegally-disseminated private information that formed the foundational pretext for Plaintiff's removal from federal service yet were obviously (based upon text, legislative history, structure and historical application since 1978) precluded from the Civil Service Reform Act remedial scheme.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, 1346, and 2201,  5 U.S.C. § 702, 5 U.S.C. §7702(e)(1)(B), 42 U.S.C. §2000e-16(c), 42 U.S.C. §1981a,

and 29 U.S.C. §621 et seq.(§633a(c)), 5 U.S.C. §7702(e)(1)(B)(CSRS failure to timely

adjudicate provision), 5 U.S.C. §552a(g)), 28 U.S.C. §1361, and 5 U.S.C. §§701-706 (sovereign

immunity waived under 5 U.S.C. §702).

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) since Defendants reside

and/or perform their official duties in the District of Columbia, and a substantial number (if not

all) of the actions and omissions giving rise to Plaintiff's claims occurred in the District of

Columbia.  In addition, Plaintiff was employed by the United States Environmental Protection

Agency in the District of Columbia at the time he was removed from federal service and from

the EPA; Plaintiff's employment records are maintained by the EPA in this judicial district; and

decisions adverse to Plaintiff's employment that are the subject of this civil action were made in

this judicial district.

11.     The government's actions described herein were conducted intentionally, wrongfully, and

in bad faith, with the purpose of causing damage to Plaintiff.

## **PARTIES**

### THE PLAINTIFF

12.     Mark William Townsend, age 68, is a former EPA manager and Senior Science Advisor

and a veteran of the United States Army, with over forty years of federal government service,

who was unconstitutionally and otherwise illegally removed from his EPA employment pursuant

to discriminatory motives and actions and, upon information and belief, based upon the

pretextual, false information deceptively invented concurrent with an unconstitutional

investigation initiated by the EPA IG and overseen by the DoJ.

## THE DEFENDANTS

13.     The United States of America is a proper defendant pursuant to 5 U.S.C. §702 and 28 U.S.C §§1331, 1343 and 1346.

14.     Defendant United States Department of Justice is an executive department of the United States which, upon information and belief, is responsible for the enforcement of federal law and the administration of justice in the United States.  The DoJ is managed by a presidentially-appointed, Senate-confirmed ("PAS") official known as the Attorney General.  Defendant United States Department of Justice may be referred to as "DoJ" or, where needed to distinguish it from the Office of the United States Attorney for the District of Columbia, it may be referenced as "Main Justice."

15.     Defendant Ronald Machen is the former United States Attorney for the District of Columbia, and in this position was a PAS official responsible, upon information and belief, for representing the federal government in the United States District Court for the District of Columbia, for prosecuting crimes committed by adults in the District of Columbia that do not fall wholly within federal jurisdiction, and for managing the Office of the United States Attorney for the District of Columbia.

16.     Defendant Vincent Cohen, Jr. is the current Acting United States Attorney for the District of Columbia, and was previous to his current position the Principal Assistant United States Attorney for the District of Columbia, and upon information and belief was directly responsible as the supervisor for the relevant office that, *inter alia*, conducted the unconstitutional investigation of Plaintiff and disseminated private information in contravention of the Privacy Act.

17.     Defendant James "Jim" Smith is the former Assistant United States Attorney ("AUSA") who investigated and repeatedly threatened to indict Plaintiff, while, upon information and belief,  relying entirely and improperly upon the falsehoods instigated by Kaminsky; Jim Smith was a subordinate to Machen and Cohen in the Office of the United States Attorney for the District of Columbia.

18.     Defendant Unknown Named DoJ Officials are unidentified individual officials within the Department of Justice who are responsible for the administration and enforcement of all rules, policies, and practices of their respective divisions within both (a) the Office of the United States Attorney for the District of Columbia and (b) Main Justice.  Each Unknown Named Defendant is sued in his or her official capacity and in his or her individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

19.     Defendant Environmental Protection Agency is an agency of the United States which, upon information and belief, was created for the purpose of protecting human health and the environment by writing and enforcing regulations based on laws passed by the Congress.  The EPA is managed by a PAS official known as the Administrator.

20.     Defendant Regina McCarthy is the current Administrator of the EPA.

21.     Defendant Robert Perciasepe is the former Deputy Administrator of the EPA.

22.     Defendant James "Jim" Jones is the current Assistant Administrator for the Office of Chemical Safety and Pollution Prevention, EPA.  Jim Jones also served as the Deciding Official in the wholly-deficient removal action of Plaintiff.

23.     Defendant Louise Wise is the current Deputy Assistant Administrator for the Office of

Chemical Safety and Pollution Prevention, EPA.  Louise Wise also served as the Proposing

Official in the wholly-deficient removal action of Plaintiff.

24.     Defendant Mark Kaminsky is currently a Special Agent in the Office of the EPA

Inspector General.

25.     Defendant Arthur Elkins is the current Inspector General of the EPA.

26.     Defendant Martha "Marty" Monell is currently Deputy Director of Management, Office

of Pesticides Program, EPA.

27.     Defendant Unknown Named Officials of the EPA are unidentified individual officials

within the EPA who are responsible for the administration and enforcement of all rules, policies,

and practices of their respective divisions within the EPA.  Each Unknown Named Defendant is

sued in his or her official capacity and in his or her individual capacity for acts and omissions

that occurred in connection with duties performed on behalf of the United States.

## FACTUAL ALLEGATIONS

28.     Upon information and belief, Plaintiff was at the time of the above-referenced

unconstitutional IG interview (and since) being targeted in an attempt by EPA upper

management (including but not limited to defendants McCarthy, Perciasepe, and Jones), to

remove older employees in favor of a younger, more diverse body of line management able to

assume key roles for several decades after the departure of the current EPA Administrator.  In a

somewhat asymmetrical fashion, the EPA misconduct underlying Plaintiff's Title VII and ADEA

claims (and the accompanying disparate treatment and continuing hostile work environment

evidentiary bases) tends not to overlap with the constitutional torts caused by the government

and its individual actors. Plaintiff is therefore left, absent *Bivens* claims, without a remedy for these constitutional harms.

29.     Upon information and belief, the *Bivens* harms and the statutory discrimination in many ways had the same ultimate goal in mind - to force Plaintiff from government. And certain government actors were involved both as individual tortfeasors and participants in various forms of prohibited discrimination. But the claims and remedies, upon information and belief, remain distinct.

30.     Contained herein is Plaintiff's depiction of the EPA discriminatory targeting, myriad and numerous constitutional violations by individual tortfeasors, and EPA/DoJ obstruction of justice, privacy violations and related process infractions undertaken, on information and belief, to protect Administrator McCarthy and her powerful benefactors from their role in the illegal activities of faux-spy John Beale and the prohibited management practices revealed by Plaintiff as a whistleblower. To Plaintiff, a more evident case of age, race and sex discrimination is difficult to imagine where, as here, the Plaintiff's responsible management official essentially asked permission of Plaintiff (and others) if she could treat them in a disparate fashion by "suggesting" they take what amounts to a constructive demotion in favor of younger employees (this was, Mafia-style, an "offer" that the responsible management official and, upon information and belief, Jim Jones believed the employees couldn't refuse).

31.     While on their face distinct, the various forms of EPA/DoJ malfeasance which form the basis of the underlying *Bivens* claims converge at multiple levels of government misconduct. The common denominator appears to be government agencies that are willing to enforce laws, rules and regulations differently for two classes of government employee - those with and those without political connections/protections. On the one hand, if DoJ and IG analysis is to be

followed to its logical apex, is a class of employees without political connections who are putative criminals and who at every agency are fleecing the American taxpayer and deserve to be terminated for time and attendance "fraud".  On the other hand, upon information and belief, are those whose political influence (and that of others) allowed them to emerge from the John Beale debacle legally unscathed (see "Beth Craig", herein).

32.     Upon information and belief, and at bottom, unscrupulous government actors and their powerful benefactors in the Executive Branch - misusing their power and that of the agencies they work for - have intentionally made Plaintiff's life a living hell by and through unconstitutional use of their investigatory and prosecutorial power, and by treating Plaintiff in a disturbingly disparate fashion and subjecting him to a continuing hostile working environment based upon thoroughly illegal criteria.  A jury trial is vital because, outside of the vortex of slothful administrative tribunals and agency procedural unfairness and disarray, a federal jury of Plaintiff's peers will provide the opportunity to make Plaintiff whole and able to proceed through life with dignity and adequate support.

33.     As noted, since the time of the EPA attempts to incriminate and terminate him, Plaintiff has been replaced at EPA by a younger, African-American female.   Upon information and belief, this occurred according to a plan by Plaintiff's supervisors to replace several older employees - a plan that Plaintiff's then-putative direct supervisor ("putative supervisor") coordinated with her management, up through and including Jim Jones.  Amazingly, as noted above, this putative supervisor also attempted to legitimize what amounted to a "culling" strategy with Plaintiff himself and other aggrieved individuals not party to the immediate matter ("other aggrieved employees" or simply "EPA witnesses").  Even now, this putative supervisor, upon information and belief, without objection from her supervisors and despite the continuing legal

challenges of Plaintiff and the EPA witnesses to these management tactics, is in the process of executing the plan to displace older subordinates, including but not limited to Plaintiff and the EPA Witnesses. Upon information and belief, this plan has the encouragement and blessing of EPA upper management, including but not limited to individual defendant and PAS senior manager Jim Jones, individual defendant and Deputy Administrator Perciasepe, and Administrator McCarthy.

34. As referenced, *supra*, Plaintiff's suffering was also caused by the EPA and DoJ refusal to investigate and pursue discipline against EPA officials involved in the notorious debacle involving John Beale. This failure to investigate and discipline brings the EPA discriminatory disparate treatment into stark contrast with Plaintiff, since Administrator McCarthy, upon information and belief, concluded that a younger female (see "Beth Craig", below), should not be disciplined for conduct far worse than Plaintiff, yet which supported the political agenda of Administrator McCarthy. In fact, none of those who, upon information and belief, actually committed "time and attendance" crimes in the context of the John Beale debacle, including Administrator McCarthy and EPA senior official Elizabeth Craig ("Beth Craig") have been sanctioned in any way. Beth Craig was, upon information and belief *promoted* and allowed to retire with a higher pension. Notwithstanding whether she was promoted, however, Craig was clearly treated in a manner entirely disparate from Plaintiff, who was summarily removed based upon pretext. Upon information and belief, despite irrefutable evidence assembled by the EPA IG in support of Beth Craig's criminal referral to DoJ, the referral somehow vanished somewhere between the offices of Administrator McCarthy and Machen. Upon information and belief, DoJ did not even investigate the political rising star, Beth Craig, and no one outside of the EPA IG even suggested she be disciplined.

35.     Upon information and belief, ample records exist in the EPA IG's office - both in the form of reports and underlying evidence - to demonstrate the time and attendance (and other) wrongdoing by Beth Craig in the John Beale matter and, by extension, the disparate treatment of Plaintiff.  Suffice it to say that this younger employee, who upon information and belief fraudulently approved time, attendance and expenses for John Beale, suffered no consequences.  Meanwhile, Plaintiff followed his supervisor's instructions (and, upon information and belief, government best practices) to reasonably accommodate a disabled subordinate - who at all times (unlike Beale) was available to do and did work - and was summarily terminated.  Further, upon information and belief, the EPA was clearly on the wrong side of the law when they purported to require Sundy to regularly resubmit medical documentation, but required (and apparently, is still of the mind that they need) no documentation whatsoever from Beale (and other politically-protected persons) for his/their unauthorized, prolonged absences and related violations of law.

36.     Upon information and belief, there is a uniquely disparate set of laws and constitutional obligations (and resultant treatment) that are applied at EPA and DoJ to Administrator McCarthy and her favored subordinates - leading this politically-protected class at EPA to believe (with good reason) they could (and can) seek to replace older, highly-competent employees with younger, compliant (and longer term) ones - and that due to this political pixie dust McCarthy and her ilk believe themselves immune from legal consequences.

A.      THE UNCONSTITUTIONAL IG INTERVIEW (JULY 3, 2012)

37.     The IG interview of Plaintiff, scheduled immediately before a federal holiday and during a particularly busy work period for Plaintiff, was begun at 9:00 a.m. and the "statement" which Plaintiff was forced to sign was not submitted until late in the afternoon (after many had left for the holiday).  Although Plaintiff "acknowledged" his rights (or, more accurately, the rights he

was being required to waive), Plaintiff never understood any of the IG instructions, what rights he was waiving, and the purpose or subject of the interview.  The "Acknowledgment" executed by Plaintiff was signed at 9:00 a.m., <u>mere seconds</u> after the IG agents arrived in his office and closed the door.  At the time the agents arrived, and compelled him to waive his rights, Plaintiff assumed the IG was there to discuss animal testing - and the IG agents did nothing, upon information and belief, to further explain the nature of their interrogation until well into the interview (and obviously after Plaintiff had unknowingly waived his rights).

38.     Upon information and belief, defendants Kaminsky and Elkins were entirely unfamiliar with the 2005 Memorandum written by then Assistant Attorney General Christopher Wray ("Wray Memorandum") instructing Inspectors General government-wide concerning the appropriate warnings to provide those, like Plaintiff, subject to interrogation.  Upon further information and belief, Kaminsky and Inspector General Elkins (who upon information and belief failed to appropriately train his investigators) conflated the appropriate techniques and warnings under the *Garrity* and *Kalkines* line of precedent (which were explained simply and adequately in the Wray Memorandum, but apparently not understood by Inspector General Elkins and Kaminsky).

39.     Upon information and belief, and although not appropriately disclosed at the time, the subject of the interrogation was Plaintiff's attempts - at the direct instruction of his then-supervisor, Oscar Hernandez ("Hernandez") - to reasonably accommodate a severely-disabled scientist, Sandra Strassman-Sundy ("Sundy"), whom Hernandez (her long-time supervisor) had allowed to work from home for two decades while she was suffering from Multiple Sclerosis.

40.     Only months later, upon information and belief, following the illegal targeting of Plaintiff, did Jim Smith (and his replacement, AUSA Angela Saffoe) determine that Plaintiff's

EPA management knew for many years (prior to assigning Plaintiff to manage her) that Sundy was incapable - due to lack of computer proficiency - of properly submitting her own time and attendance.  Upon information and belief, this function had for many years (and prior to Plaintiff even joining the relevant EPA Office) been addressed by prior management per a system in which Sundy would simply orally (by telephone) provide her "time and attendance" - understood by the prior office management as only the hours she had taken leave, not the hours she had worked - to the Office "timekeeper".  Upon information and belief, the "timekeeper" would then, upon express instructions from Hernandez (who had directly supervised Sundy for over 20 years) input and approve Sundy's time, which was subsequently "certified" in bulk.  At the instruction of a manager other than Plaintiff, upon information and belief, if Sundy did not submit any leave then it was assumed she had worked a full pay-period and her time and attendance was so certified.  Upon information and belief, this was the "Sundy System" for over two decades under the direct knowledge and approval of EPA senior manager Hernandez - a work place practice inherited by Plaintiff and enforced by Hernandez.

41.      Upon information and belief, AUSA Jim Smith was also aware of the Sundy System, and the accompanying Hernandez policy and workplace practice, and more disturbingly, about the improper *Garrity* violations of Kaminsky and Inspector General Elkins.  Further, Machen, Cohen and Jim Smith were by the nature of their employment on notice of and responsible for ensuring and enforcing compliance with *Garrity* and the Wray Memorandum.  Upon information and belief, they each failed to do so.  And to make a bad situation worse, they evidently relied to a great extent upon the knowledge and veracity of Kaminsky (in lieu of professional investigators from the FBI).

42.     Yet it was Plaintiff who was ultimately and mysteriously disciplined by EPA - not even John Beale himself (the most prolific time and attendance fraudster ever) was, upon information and belief, the subject of <u>any</u> EPA adverse action despite his federal conviction for time and attendance fraud.  Upon information and belief, John Beale is drawing one of the most lucrative federal pensions in history (for his grade and years of employment) while serving his prison sentence, and is likely welcome to return to the EPA under Administrator McCarthy as an annuitant following his incarceration.

B.      THE IG AGENT GOES TO DOJ

43.     Upon information and belief, despite his maintenance of the Sundy System for over two decades - including during the time he had assigned Sundy to work under Plaintiff - Hernandez was allowed to immediately retire, after providing to Kaminsky and Jim Smith entirely subjective information regarding Plaintiff.  Upon further information and belief, the EPA time and attendance software used during Plaintiff's period as "branch chief" allowed the Hernandez Sundy System to proceed unabated *i.e.*, the software allowed individuals other than Sundy to submit and certify her (Sundy's) time and attendance (a fact known to Hernandez, as well as the knowledge that Sundy was apparently incapable of submitting her own time and attendance).

44.     Upon information and belief, the Hernandez Sundy System was a *de facto* policy of Hernandez' office.  His superiors (including Wise and Jim Jones) were either aware of or willfully blind to the time and attendance practices encouraged and approved by Hernandez. These Hernandez work place practices - both the *de facto* policy and the culture it created - were imposed upon Plaintiff when he inherited management responsibilities for Sundy.  Upon information and belief, Hernandez created, sustained, and is fully responsible (along with his superiors) for any mistakes made in the timekeeping and leave policy for Sundy.

45.     Upon information and belief, Kaminsky approached the DoJ in an attempt to "interest" the local United States Attorney (USA-DC) in prosecuting Plaintiff for the illicit fruits obtained from the unconstitutional interrogation by Kaminsky.  Such actions by the IG are generally taken in advance of an actual "criminal referral," and upon information and belief this action was approved and encouraged by Inspector General Elkins.  Upon information and belief, based upon certain statements to the USA-DC that were declaredly false Kaminsky convinced his IG supervisors (and ultimately Inspector General Elkins) to "refer" the matter to the USA-DC, which did not immediately decline to investigate Plaintiff and target him for prosecution.

46.     In an ill-fated decision of the USA-DC, Jim Smith, upon information and belief, relied wholly upon misleading representations of Kaminsky, ignored the Wray Memorandum instructions (or simply never read them, as he was obligated to do) and did not seek the investigative expertise of the Federal Bureau of Investigation.  Presumably unknown to Jim Smith, Machen or Cohen (but readily ascertainable with any degree of diligence) was that Kaminsky, a former air marshal with no legal and little meaningful investigative training, had been employed by the EPA IG for approximately two months.  Upon information and belief, significant exculpatory information was ignored by Kaminsky, leading Jim Smith, Machen and Cohen to accept at face value information that should have given pause to any professional prosecutor.

47.     Upon information and belief, Machen and Cohen had previously served as Assistant United States Attorneys in the USA-DC, and as white collar practitioners at prestigious international law firms where they would have been familiar with relevant statutory, regulatory and constitutional concepts - as well as the concept of prosecutorial discretion.  Notwithstanding the alleged errors of Jim Smith, Machen and Cohen certainly should have, upon information and

belief, known better than to accept the Kaminsky and Elkins contentions without further introspection and critical inquiry.

48.     Kaminsky was also assigned to investigate the aforementioned matter involving EPA employee John Beale.  Upon information and belief, Beale later admitted to massive time and attendance fraud for misleading his supervisors into believing he was on assignment for the Intelligence Community ("IC') when he was apparently actually home (and on various travel) doing little to no work for the United States Government and/or for EPA.  More likely, upon information and belief, John Beale simply conceded wrongdoing in order to spare Administrator McCarthy political embarrassment and further scrutiny for criminal wrongdoing.

49.     Upon information and belief, Beale's admissions, and the subsequent media attention casting a light of incompetence and complacency upon the EPA management structure (*e.g*., Beale had been among the highest-paid employees at the time of his fraud, yet no one at EPA - most notably Beth Craig who approved Beale's time and attendance - seemed to know where he was working), laid the foundation for the EPA's perceived need to "do something" about time and attendance fraud.  Upon information and belief, rather than punish Beth Craig, a political appointment of Administrator McCarthy, EPA upper management sought political cover (for themselves and their political benefactors) by scapegoating Plaintiff with their (rather convenient) pretextual misfeasance, while seeking to place younger, longer-term employees into the void and assuring continued acquiescence.

50.     Upon information and belief, Kaminsky's investigation of John Beale, which amounted to little more than confirming Beale was not doing work for the IC, emboldened Kaminsky to further his career prospects by pursuing Plaintiff.  Upon information and belief, Kaminsky has profited financially through his statements and actions in pursuit of Plaintiff.  The alleged

nonfeasance of Inspector General Elkins, who upon information and belief failed to properly manage Kaminsky (or monitor the implications surrounding stigmatizing Plaintiff), led to significant harm to Plaintiff during these crucial periods of the DoJ investigation.

51.     On information and belief, based upon erroneous representations, Kaminsky continued to pressure Jim Smith (who had also been assigned to the Beale matter) to pursue the prosecution of Plaintiff - routinely conflating the two cases and insinuating that then-existing evidence supported a level of parity between Beale's matter and that of Plaintiff.

52.     Ultimately, upon information and belief, Jim Smith convinced Cohen and Machen to approve a criminal investigation of Plaintiff, and Jim Smith (according to representations he made to Plaintiff and Plaintiff's legal counsel) went about empanelling a Grand Jury.  Upon further information and belief, as a result of Kaminsky's representations to Jim Smith, Machen and Cohen were led to believe that Plaintiff's prosecution would fit the "public corruption" prosecutorial platform that Machen had adopted as a focus of his tenure as the PAS United States Attorney.

53.     In a bleak example of the errors committed during the investigation of Plaintiff at DoJ, Jim Smith and Kaminsky, upon information and belief, forgot to serve a target letter upon Plaintiff.  Plaintiff discovered that he was being targeted for prosecution by the DoJ based upon a telephone message left for the undersigned by Jim Smith.  The forgotten target letter emerged later, in the Agency File underlying the EPA removal action against Plaintiff.

54.     Attentive now to the unfolding Beale matter, and to his own exposure based upon the "notice" of Jim Smith, Plaintiff made a series of protected whistleblower disclosures regarding the defective EPA time and attendance system.  Among these official, protected disclosures were

to the United States Office of Special Counsel ("OSC") and the United States Senate Committee

on Environment and Public Works ("EPW").  Plaintiff also volunteered to make (and thereafter

made) disclosures to the DoJ, through the USA-DC and Jim Smith (and later, AUSA Angela

Saffoe).

55.     During March and April of 2013, Plaintiff disclosed to the OSC and to Jim Smith the fact

that the EPA time and attendance system was by its nature inherently flawed and subject to

abuse, that no training was offered or required concerning its use, and that any EPA employee

could thus fall prey to the inherently-flawed system whereby time and attendance was certified in

bulk and by default (meaning that, upon information and belief, delinquently-submitted time and

attendance did not result in any delay in the employee being paid).  Plaintiff revealed that not

only did this process have the very real potential for "criminalizing" every EPA employee who

submitted imprecise time and attendance "writings" (rather than simply submitting nothing), but

also that, upon information and belief, Sundy would have been compensated every pay period

had Plaintiff simply ignored Hernandez' instructions to accommodate Sundy (meaning Plaintiff

did nothing that the default system, absent Plaintiff's intervention, would not otherwise

accomplish).  Plaintiff also provided official disclosures to the DoJ in the form of the names of

numerous EPA management personnel who had been responsible for the exact alleged

indiscretions for which Plaintiff was being investigated (the shocking disclosures concerning

Beth Craig were revealed only later).

56.     Unknown to Plaintiff, and without his consent, the private, privileged information from a

DoJ "debriefing" session (and thus a DoJ file under the Privacy Act), which also likely

constitutes private grand jury information, was, upon information and belief, intentionally

disclosed and disseminated to the EPA by the DoJ (through Jim Smith and Kaminsky) knowing

that no statutory exception applied to the prohibited disclosure.  Upon information and belief, this deliberate violation of law was a breach of trust from the most powerful enforcement body in the federal government, and caused (and is causing) grievous harm to Plaintiff - and thus must be considered a key causative factor in all actions brought herein - as it provided "cover", upon information and belief, for the illegal pretext brought to bear in constructively demoting then removing Plaintiff.

57.     Upon information and belief, throughout the course of making protected disclosures, Plaintiff made a substantial positive contribution to the EPA as evidenced by the fact that internal EPA regulations have been significantly changed to avoid criminalizing the inadvertent blurring of a "false writing" criminal act with those acts (including those undertaken upon instructions from superiors) that employees across the EPA (and the government in general) engage in on a regular basis concerning time and attendance.  This positive contribution will presumably spare employees from being ensnared in a meritless, illegal investigation - and, upon information and belief, prevent agency leadership from misusing the criminal law as pretext for culling older employees from their ranks.

58.     Upon information and belief, Kaminsky and Jim Smith (with the support of Machen and Cohen) continued to pressure Plaintiff to plead guilty to an utterly ill-defined set of local and federal crimes.  Despite the constant IG and DoJ threats, Plaintiff refused to admit to criminal activity where none existed.

59.     Undeterred, Kaminsky (who was present in lieu of the FBI at all interviews with Plaintiff conducted by Jim Smith), upon information and belief continued to improperly militate in favor of Plaintiff's prosecution under the theory that Plaintiff had submitted "False Statements" and "False Writings", under 18 U.S.C. § 1001 and 18 U.S.C. § 1018.  Questioned subsequently, and

under oath, Kaminsky admitted that he knew virtually nothing about these statutes, their past use, or for that matter, anything else.  Nonetheless, apparently emboldened by the remonstrations of Kaminsky and upon information and belief, Jim Smith (with Kaminsky present) informed Plaintiff that a federal Grand Jury had been empanelled to hear the "charges" against him and that an indictment could be "imminent".

60.     For the next several months, Jim Smith threatened Plaintiff (through counsel) with imminent indictment - forcing Plaintiff to the very edge of sanity and deep into a depressive state.  When asked whether Plaintiff could appear before the Grand Jury and testify, Jim Smith (after initially agreeing to the request), abruptly refused without adequate reason.  Plaintiff, based upon the threats of indictment, put his affairs in order and planned upon imminent arrest, detention and the other accoutrements of the processing of an indicted individual.  Plaintiff was driven deeper into an emotional abyss as a direct result of the threats of Jim Smith, with the alleged blessing and encouragement of Machen and Cohen.

61.     Without notice, Jim Smith was replaced on Plaintiff's investigation, while an indictment was not returned.  Angela Saffoe (Jim Smith's replacement on Plaintiff's investigation), while continuing to focus on the investigation of Plaintiff, subsequently replaced Kaminsky as the primary agent interfacing with the USA-DC.  Upon information and belief, the USA-DC lost faith in the veracity of Kaminsky and further believed that Kaminsky had recklessly exposed DoJ and EPA personnel to significant *Bivens* and related liability.

62.     Upon information and belief, fairly soon thereafter Angela Saffoe (without any notice to Plaintiff or his legal counsel), sent to Kaminsky a short letter (embedded in an electronic mail message) informing the EPA IG that DoJ would not pursue the prosecution of Plaintiff.  Neither the EPA nor the DoJ informed Plaintiff of the decision.  Relatively soon thereafter, both Jim

Smith and Angela Saffoe would, upon information and belief, leave employment with the DoJ. Plaintiff, by this point nearly suicidal, was left in limbo for several more weeks - including the Christmas and New Year holidays - without any indication of whether he would be arrested, incarcerated and tried for "public corruption".  Upon information and belief, Machen and Cohen were both aware of and approved the declination letter/electronic mail to the EPA IG, the closure of Plaintiff's case, and the departures of Jim Smith and Angela Saffoe.

63.     In or around February of 2014, in the context of another protected disclosure to the EPW, Plaintiff was , upon information and belief, asked by a Member of Congress or their staff to describe his experience to the *Wall Street Journal.*  Hesitant at first, Plaintiff (upon advice of counsel) permitted his story to be profiled.  The resulting editorial concluded that the USA-DC should have been utilizing its prosecutorial resources to pursue wrongdoers in the Beale matter, including Administrator McCarthy, rather than pursuing Plaintiff on dubious (later, upon information and belief, determined to be fallacious) legal and ethical grounds.  At the time of this publication, Plaintiff had still not been notified of the letter from DoJ to Kaminsky declining prosecution, and neither Plaintiff nor the undersigned counsel had been informed that Plaintiff's case had been closed, declined or that the DoJ investigation posture had been modified in any way.

64.     Within days of the *Wall Street Journa*l editorial being published, on or around February 25, 2014, Plaintiff was made aware (but not by the DoJ) of the December 2013 communication from Angela Saffoe to Kaminsky (as described above), informing the IG that the DoJ would not pursue the prosecution of Plaintiff.

65.     Upon contacting the USA-DC (Angela Saffoe was no longer employed by the USA-DC or DoJ), and speaking with several line and managerial prosecutors, it was finally disclosed to

the undersigned by Debra Connor, Chief of the Fraud and Public Corruption section of the USA-DC, that the Townsend case was "closed."  At no point since has Plaintiff or his counsel been sent written confirmation of such "closure".

66.     It may never be known precisely why, when, or where in the chain of command the DoJ declined to prosecute Plaintiff and closed his case, but, upon information and belief, the primary reason is that the USA-DC (or more precisely, a DoJ supervisor not named as a defendant here) realized they (utilizing their extraordinary power to prosecute) had recklessly made someone's life a "living hell" for over a year while they slowly uncovered the inaccuracy in Kaminsky's submissions and counterfactual advocacy in favor of prosecution, as well as Inspector General Elkins' negligent misjudgments, their own resulting misfeasance and negligence in failing to abide by the Wray Memorandum instructions, and, overall, the illogicality in allowing this travesty to occur.

67.     Upon information and belief, neither any fact, nor evidence, nor relevant legal construct invoking unlawful activity was applicable to Plaintiff's conduct, which, upon information and belief, involved the following of his supervisor's instructions to reasonably accommodate his subordinate employee consistent with government-wide best practices.  But that inconvenient truth, upon information and belief, did not deter Administrator McCarthy and her loyal staff from using the charade as pretext to accomplish their objective of both removing Plaintiff and deflecting attention from John Beale by scapegoating Plaintiff (while ignoring the malfeasance of Beth Craig, whose actions seemingly mirrored the very facts, evidence and legal constructs that, upon information and belief, led Machen and Cohen to pursue this matter as a "public corruption" case.

C.      <u>EPA TARGETS PLAINTIFF FOR REMOVAL</u>

68.     Meanwhile, Administrator McCarthy was being excoriated in the media and before Congress for her role in the John Beale debacle - and, upon information and belief, was looking for a sacrificial scapegoat to deflect attention from her own wrongdoing.  Chastened, Administrator McCarthy, upon information and belief, ordered (indirectly, through her various subordinates) EPA attorneys in her Office of General Counsel ("OGC") and in EPA Labor and Employee Relations ("LER"), to initiate an investigation in support of removal proceedings regarding Plaintiff.  Upon information and belief, blaming Plaintiff also served their ulterior purpose, as referenced above, of pretext for the ongoing initiative to target older employees within the Division from which Plaintiff was ultimately removed.

69.     Upon information and belief, McCarthy had not been content to use her lawyers as weapons in the unconstitutional war she and Perciasepe were waging upon Plaintiff.  In consulting with her deputies, Perciasepe and Jim Jones, she was, upon information and belief, assured that Jim Jones had in October 2013 arranged for his long-term employee (and close confidant), Marty Monell, to directly assist Jim Jones in conducting an(other) unconstitutional investigation of Plaintiff.  This would be the third of (at least) five illegal, unconstitutional government investigations directly targeting Plaintiff.

70.     Upon information and belief, Monell both unduly pressured the Plaintiff's "office timekeeper" and promised the timekeeper she would keep her job if the timekeeper (who had also input Sundy's time and attendance, and thus had significant exposure under the very statutes referenced by DoJ and Kaminsky in pursuing Plaintiff) would provide enough information to implicate and/or remove Plaintiff.  Further, upon information and belief, the October 2013 illegal investigation ordered by Jim Jones was conducted in direct conflict with, and in obstruction of a sitting federal Grand Jury, ongoing investigations by Congress, as well as the investigations by

the DoJ and the EPA IG.  Further, Monell issued no warnings commonly required, such as

*Garrity* or *Kalkines* (or any other warnings, for that matter).  Monell, upon instructions from Jim

Jones, simply contacted a manager of the timekeeper, and both Monell and the manager showed

up unannounced (in a confidential area in which Monell was not permitted) and began asking

incriminating questions about Plaintiff.  When questioned under oath about the illegal

investigations he ordered be conducted by Monell, Jim Jones invoked his Fifth Amendment

privilege against self-incrimination 11 times - after consulting with EPA OGC (and not his

private) attorneys.  Monell implicated Jim Jones for these extraordinary constitutional and legal

violations when she was questioned under oath.

71.     Administrator McCarthy thereafter testified before Congress and assured them she was

cracking down on time and attendance fraud in the wake of the John Beale debacle.  Upon

information and belief, at the time of her congressional testimony Administrator McCarthy knew

and had approved of (1)  the illegal investigations targeting Plaintiff, and (2) the plan to target

older employees in this vital EPA branch office (which, among other things, interfaced with

industry concerning toxic chemical rules and their interpretation/enforcement).

72.     Upon information and belief, EPA personnel from OGC and LER, having been given the

"get Townsend at all costs" order, pressured Plaintiff's fellow branch chiefs (within the same

office) in an attempt to obtain inaccurate sworn statements from the branch chiefs that would

assist with a planned removal action against Plaintiff.   As described by Wise under oath, the

intent of these EPA personnel was to rebut information illegally disseminated to EPA from the

DoJ (*see* COUNT XVIII, below), thus, upon information and belief, attempting to invalidate- for

purposes of a removal action - exculpatory information used by the DoJ in refusing to move

forward in prosecuting Plaintiff.  This particular illegal investigation (one of a continuing series,

as it turns out) was admittedly ordered by Wise (Jim Jones' deputy administrator <u>and the</u> <u>Proposing Official</u> in the biased removal action against Plaintiff), although it is unclear whether the illegal investigation was in fact recommended by EPA OGC attorneys  - such OGC attorney misconduct would, upon information and belief, be consistent with significant OGC misconduct in several recently adjudicated matters in which OGC was severely criticized by both Administrative Judges and District Judge Royce Lamberth.

73.     According to testimony from Jim Jones, EPA OGC attorneys suggested that he (Jones) be the "Deciding Official" in the Agency's planned removal action against Plaintiff, knowing, upon information and belief, that Jim Jones had already formed sufficient bias to remove Plaintiff without according to Plaintiff any of the process due to a similarly-situated EPA employee. Upon further information and belief, this bias had been formed not only during Jim Jones' discussions with Administrator McCarthy and Perciasepe, but was also based upon (1) allegedly erroneous information given to him for over a year by the IG (another fact to which Jim Jones admitted under oath);  (2) the information illegally obtained by Monell during the unconstitutional and illegal investigation which Jones ordered; and (3) other preconceived biases which emerged during the deposition of Jim Jones.  Under the circumstances, and upon information and belief, it is clear that there was only one reason why the EPA lawyers and Administrator McCarthy chose Jim Jones to be the Deciding Official - in order to conduct a removal process that was entirely lacking in due process and subject to certainty in its (entirely unjust) outcome.

74.     Upon information and belief, Administrator McCarthy and Jim Jones believed (and believe), that through their illegal actions, the convenient and desired foundation had been laid

for the pretextual rationale to remove Plaintiff based upon discriminatory motives (age, race, sex, reprisal).

D.    DISPARATE TREATMENT & CONTINUING HOSTILE WORK ENVIRONMENT

75.    Upon information and belief, Administrator McCarthy and Perciasepe gave the order to terminate Plaintiff (or constructively remove him by making his working conditions intolerable, thereby forcing him to involuntarily retire) and to ignore all exculpatory information, including that derived from DoJ interviews in which Plaintiff had made protected disclosures concerning EPA management.

76.    Upon information and belief, Plaintiff was subject to months of continuing hostile work environment and disparate treatment, for which he filed complaints with the EPA Office of Civil Rights ("OCR/EEO").  These cases were subsequently consolidated in the early summer of 2014. The EPA continued to delay addressing Plaintiff's status, leading Plaintiff to believe he was being fully integrated into his reorganized Division but compounded by further disparate treatment and the continuing hostile work environment.  Upon information and belief, the continuing hostile work environment and disparate treatment were ordered by Jim Jones and executed by Plaintiff's putative supervisor with the knowledge and acquiescence of her supervisors, at the request of Administrator McCarthy and Perciasepe, to "get rid of Townsend", *i.e.*, create intolerable work conditions that would result in his constructive removal - which the EPA OGC would, upon information and belief, characterize as "voluntary retirement."

77.    In the midst of this continuing hostile work environment, Plaintiff was openly pressured by his putative supervisor - who was slated to assume the position vacated by Hernandez - <u>to</u> **<u>"step aside" as branch chief in order to make room for "younger" employees</u>** who had been

selected and sponsored by the EPA to attend management training.  (As referenced above,

Plaintiff has been replaced in the position he encumbered prior to his removal by a younger,

African-American female).  The name of the less-qualified, African-American female now

encumbering Plaintiff's former position is known - as are her credentials - but her identity is

being withheld in good faith at this time in order to preserve her privacy interests.

78.     Plaintiff refused to step aside despite the threats and pressure, and, upon information and

belief, was constructively demoted based upon age, race and gender, and stripped of all

management responsibility.  Plaintiff had prospectively supplemented his OCR/EEO complaints

to reflect this discriminatory downgrade in duties (including the constructive demotion), but was

unaware of the extraordinary scope of the underlying discriminatory motives during this time

period.  Within days of the constructive demotion, and before the prohibited personnel practice

was challenged at the MSPB, Plaintiff received notice that he was to be removed from the EPA

and from federal service.  Plaintiff, of course, was prevented from access to documents

supporting his appeals by being immediately physically removed from his office and the EPA

building.  Plaintiff was served with the NPR and "Agency File" as he was escorted from the EPA

Clinton building.  The Agency File accompanying his Notice of Proposed Removal ("NPR"),

like the NPR itself, was/is entirely inadequate, and contained virtually nothing approximating

what was/is needed to challenge the meritless adverse action.

79.     Plaintiff was physically removed from his office (in a humiliating fashion) on July 31,

2014, after being served with the inherently-flawed NPR, in what would ripen into (upon final

notice of removal in October 2014), blatant and illegal retaliation for, *inter alia*, his numerous

protected disclosures and for filing OCR/EEO complaints, and the pretextual and multi-level top-

down misfeasance by the EPA.  Upon information and belief, defendant EPA (through defendant

and NPR "Proposing Official" Wise) utilized discriminatory pretextual reasoning in the NPR that had been rejected by the DoJ as unreliable, and which later was conceded by Kaminsky (under oath in a deposition) to be false and misleading.

80.     Plaintiff responded aggressively to the defective EPA notice, filing numerous statements undermining the pretextual reasoning of the NPR.  Upon information and belief, and based in part upon the subsequent deposition testimony of individual defendant Wise, Administrator McCarthy ordered that numerous EPA lawyers be assigned to defend the biased, discriminatory and pre-determined termination of Plaintiff - who upon information and belief had embarrassed Administrator McCarthy with his whistleblowing disclosures and discrimination complaints, as well as becoming the unintended foil representing the recurring criticisms in the media and elsewhere concerning the favorable treatment of Beth Craig (including legitimate requests for Administrator McCarthy's removal by the President, and her indictment).

81.     Upon information and belief, Administrator McCarthy ordered Jim Jones to formally remove Plaintiff effective October 7, 2014.  Upon further information and belief, the pretextual rationale accompanying the removal notice was based upon fabricated claims, false statements, illegal duress and inducement of false statements - among other constitutional torts and distinct claims described herein.   As well, upon information and belief, the removal notice represents bald reprisal against Plaintiff for doing the right thing and for defending oneself against illegal discrimination.

E.     THE FLAWED MSPB MIXED CASE PROCESS:  FAILURE TO ADJUDICATE

82.     Plaintiff timely appealed the biased removal action to the Merit Systems Protection Board

("MSPB") on October 17, 2014 - over 350 days elapsed between the filing of the MSPB appeal

and the filing of the immediate Complaint.

83.     The MSPB accepted the mixed case appeal.  Plaintiff took depositions of key Agency

officials in which information was extracted tending to prove a deeply-flawed procedural process

causing harmful error and not otherwise in accordance with law, and also, upon information and

belief, criminal wrongdoing on the part of Jim Jones (the Deciding Official) and Kaminsky (the

investigator whose previously disavowed and false findings and conclusions are relied upon

entirely by the EPA in removing Plaintiff), among several others.  During discovery, Plaintiff

also disclosed to the EPA OGC numerous process crimes allegedly committed by Kaminsky, and

supplied an analysis of process crimes allegedly committed by Jim Jones, among others.

84.     Upon information and belief, several flawed AJ rulings had been inappropriately

delegated to MSPB "law clerks", and - in addition to a clear abuse of discretion - tended to show,

upon information and belief, an AJ incapable of acceptably managing a caseload and providing

timely dispositions.  *See* para. 92, *infra*.

85.     With numerous motions pending, and discovery still proceeding, the AJ became

nonresponsive.  Only through Plaintiff's own investigation was it revealed, upon information and

belief, that the AJ had taken up the (albeit noble) cause of her *alma mater* (Sweetbriar College),

which had been abruptly closed due to financial distress. It was later revealed in *The Washington

Post* that the AJ led the effort to re-open Sweetbriar College, and many media outlets (and a

public website devoted to "#SaveSweetBriar") identified the AJ as the "Chair of Saving

Sweetbriar, Incorporated".  This would perhaps explain, upon information and belief, her AWOL

status from Plaintiff's MSPB case for so many months. Regardless, no notice was extended by

the MSPB informing the parties of the AJ's absence, formal leave status, outside affiliation (with a corporate interest), nor of her retirement (nor, quite frankly, of anything else).

86. Upon information and belief, during her tenure as Chair of the above-referenced corporation (which upon information and belief continues to the present), the AJ not only spent significant time (outside of government employment) on Sweetbriar advocacy, but also on exchanging pithy views during core work hours on social media - where the AJ became known for coining the phrase "#Cow Money" (her term for expressing devotion to Sweetbriar, and willingness to do anything to save it - including selling some prize cattle and, upon information and belief, spending long periods away from her federal employment) in addition to the ever-important fundraising mission for "#SaveSweetBriar". According to the AJ, "[t]his is a very personal battle for me and my siblings and nieces and nephews in honor and in memory of Mom." Indeed, upon information and belief, the "battle" appears to have been all-encompassing for many months, while the AJ drew a federal salary, enjoyed federal benefits and accumulated creditable service toward her civil service retirement.

87. Upon information and belief, the AJ assisted "Save SweetBriar" with legal pleadings and analysis, up to and including the Supreme Court of Virginia, in addition to lobbying Virginia legislators and Virginia Attorney General Mark Herring, drafting and negotiating a comprehensive Memorandum of Understanding among all litigants in historic litigation, and writing, tweeting and speaking prolifically regarding the need to terminate the Sweetbriar College administration (who apparently announced the Sweetbriar closure) for "incompetence."

88. During the period in which the AJ was deeply involved in Saving Sweetbriar, she also, upon information and belief, entered into and executed obligations of her corporate group to raise, collect, handle and distribute over $3.6 million. The AJ was quoted on September 2, 2015

as saying "[t]he dedication and generosity of the thousands of donors to Saving Sweet Briar, Inc.,
have allowed us to exceed the terms of the settlement agreement reached in June to keep the
College open...This was a historic and heroic effort by all who love Sweet Briar and dedicated
themselves to the promise of seeing her thrive in perpetuity."

89.     Upon information and belief, the AJ was without interruption receiving compensation
and benefits from the United States Government during the above-noted "historic and heroic
(and extraordinarily time-consuming) effort."

90.     Plaintiff's mixed case appeal, and numerous complex motions, have been before the
MSPB and the same AJ for nearly a year - including at least six months in which the AJ was
integrally involved in the #Saving Sweetbriar effort (which was apparently "created on March 3,
2015, after the sudden announcement of the closure of Sweet Briar College").

91.     Plaintiff received nothing from the AJ beginning with the period contemporaneous with
the effort to #SaveSweetBriar.

92.     A confusing and incongruous MSPB "Order" was received on September 17, 2015,
noticing a hearing in Plaintiff's matter for December 3, 2015 - over 11 months after the MSPB
appeal was initiated and following closely on the heels of a decision of the United States Court
of Appeals for the Federal Circuit in *Shapiro v. Social Security Administration*, 115 LRP 41264
(Fed. Cir. 09/01/15), in which the Federal Circuit upheld a finding of good cause to remove an
Administrative Law Judge for failure to acceptably manage cases, including providing timely
dispositions.  The Order of September 17th was accompanied by a similarly and thoroughly
inchoate discovery ruling, which appears completely disengaged from the case to which it
purportedly applied, and suffers from nonexistent reasoning and failure to address alleged past

MSPB error, alleged abuse of discretion, alleged Agency misfeasance requiring interlocutory certification and MSPB disposition, and other material pleadings.

93.     Statutory processing times for MSPB appeals of adverse actions such as removals is 120 days - this period is meant to include not only discovery, hearing, the issuance of an Initial Decision by the AJ, Petition for Review and full MSPB review and disposition following review. Plaintiff's mixed case appeal - involving both merits systems (MSPB) claims and discrimination (EEO) claims - has languished before the same AJ for what will be a year on October 17, 2015, without a word to the parties for the past six months as to a reason for the undue delay or the material pleadings in the appeal.  Considering the complexity of the discovery and related motions now pending; the alleged abuse of discretion in the orders issued thus far; the alleged severe Agency misconduct (including, upon information and belief, criminal wrongdoing by the investigator Kaminsky, the Deciding Official and the Proposing Official, and likely several OGC and LER attorneys, among others) and the Petition for Review that would follow any Initial Decision of the AJ, this MSPB mixed case matter is far past any reasonable time period for review. While Sweetbriar College has rightfully been saved, and the AJ/corporate office has rid Sweetbriar of its "incompetent" prior leadership, Plaintiff's appeal has, upon information and belief been relegated to a lower-tier status by a distracted AJ/corporate officer who never gave notice of official leave while advocating (ostensibly full-time) to save Sweetbriar.

94.     Upon information and belief, the AJ violated at least two criminal statutes by certifying her official time and attendance during the lengthy period she was advocating on behalf of Sweetbriar College and failing to acceptably manage cases or provide timely dispositions. Ironically, these are the very criminal violations that the DoJ and Kaminsky attempted to falsely attribute to Plaintiff.  *See* 18 United States Code § § 1001, 1018.

95.     By law, an MSPB appellant may bring this immediate federal district court action in a

mixed case appeal if he does not receive a final Board decision within 120 days (extended by 60

days in this case due to proceedings being stayed while the parties pursued further discovery)

from the date he files his appeal with the regional office.  5 U.S.C. 7702(e)(1)(B), and the proper

action for failure of the MSPB to dispose of a mixed case appeal is for the federal district court

to assume jurisdiction over Plaintiff's discrimination claims.

96.     Furthermore, and upon information and belief, there may be proceedings against the

MSPB AJ - and undoubtedly recriminations against the MSPB - which will only serve to delay

the vestiges of his appeal, *e.g*., whistleblower reprisal claims, for which the MSPB must retain

jurisdiction.  *See Shapiro v. Social Security Administration*, 115 LRP 41264 (Fed. Cir. 09/01/15).

97.     Just as this Court can assume jurisdiction and adjudicate *de novo* Plaintiff's

discrimination claims, the court can independently *assume* jurisdiction over claims arising out of

the unconstitutional interrogation and investigations of Plaintiff by EPA and DoJ.   Here, those

claims, upon information and belief, include *Bivens* claims against several government actors for

constitutional torts damaging Plaintiff - during the periods that the IG was, upon information and

belief, misleading DoJ, that DoJ was threatening Plaintiff to the verge of suicide, and during the

period that the same false IG information (having been rejected by the DoJ) was accepted as the

unvarnished truth and used as unlawful pretext for removing Plaintiff from employment and

federal service.

98.     Further, as Plaintiff knows of no statutory or regulatory mechanism to force the MSPB to

adequately and timely adjudicate his merit systems claims and affirmative defenses - <u>a clear

oversight by the drafters of the CSRA</u> recently alluded to in the *Washington Post* - Plaintiff is for

purposes of *Bivens* jurisdiction left without a Civil Service Reform Act remedy (and does not

appear to have a remedy there for these constitutional torts considering, upon information and belief, the highly unusual level of criminality and bias inserted into the proceedings even if the MSPB were to eventually adjudicate his merit systems claims) - a result that, upon information and belief, neither Congress in defining district court jurisdiction nor this Court (nor, for that matter, the federal Courts of Appeals) would countenance.

99.     As to Plaintiff's *Bivens* remedy, the fact that Plaintiff's interests are protected by the United States Constitution rather than by statute or common law, does not justify any assertion that federal courts are powerless to grant damages in the absence of explicit congressional action authorizing the remedy.  Similarly, this Court, exercising its equity jurisdiction, can entertain claims for fees and costs, either pursuant to the Equal Access to Justice Act (tolled as to DoJ *Bivens* liability due to the failure of DoJ to adequately communicate its investigative posture), or its own equity power, for those government tortfeasors who forced Plaintiff to defend himself from, upon information and belief, admittedly false allegations of criminality, harassed him to the precipice of suicide, and then caused him to impoverish himself disputing allegedly false information emanating from the same erroneous source when the EPA chose to improperly utilize EPA regulation (and give complete weight to allegedly false statements)  and information disseminated in violation of the Privacy Act, to establish the foundation, upon information and belief, for the entirely illegitimate underlying removal.

100.    No government employee should have to suffer the myriad of tortious and discriminatory harm that EPA, DoJ and the individual defendants have, upon information and belief, imposed upon Plaintiff, simply because the government actors inflicting such damage are powerful (and allegedly corrupt) enough to try - and assuming that there will always be more powerful benefactors to protect them and government attorneys to represent their illicit interests.

## CAUSES OF ACTION

### COUNT I

**(Violations of 29 U.S.C. §621 et seq. - Age Discrimination in Employment - *De Jure*)**

Against Defendant Environmental Protection Agency

101.    The foregoing paragraphs 1-100 are realleged and incorporated by reference herein.

102.    Plaintiff's putative supervisor, during an office reorganization begun in 2013, illegally pressured Plaintiff to step aside as branch chief in favor of younger EPA personnel.

103.    Plaintiff was replaced (in the position he encumbered when removed) by a younger, African-American female.

104.    The relevant Defendant's conduct as alleged herein constitutes discrimination based on age in violation of the ADEA.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

### COUNT II

**(Violations of 29 U.S.C. §621 et seq. - Age Discrimination in Employment - *De Facto* Policy)**

Against Defendant Environmental Protection Agency

105.    The foregoing paragraphs 1-104 are realleged and incorporated by reference herein.

106.  Senior EPA officials in Plaintiff's immediate division, beginning in 2012-2013, targeted older, more experienced personnel and subjected them to disparate treatment, continuing hostile work environments, intolerable working conditions, and prohibited personnel practices considered constructive adverse actions.

107.     This *de facto* EPA policy encapsulates other prohibited personnel practices, including but not limited to age-based:  misuse of authority; obstruction of the right to compete for a position; influencing the withdrawal of one or more persons from competition to improve the prospects of others; and taking or failing to take personnel actions where such taking (or failing to take) such actions is in violation of law, rule or regulation.

108.     The relevant Defendant's conduct as alleged herein constitutes discrimination based on age in violation of the ADEA.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

## COUNT III

**(Violations of Title VII of the Civil Rights Act of 1964, as amended - Based Upon Sex)**

Against Defendant Environmental Protection Agency

109.     The foregoing paragraphs 1-108 are realleged and incorporated by reference herein.

110.     The relevant Defendant's conduct as alleged herein constitutes discrimination based on sex in violation of Title VII.  This discrimination also encapsulates other prohibited personnel practices, including but not limited to sex-based:  misuse of authority; obstruction of the right to compete for a position;  influencing the withdrawal of one or more persons from competition to improve the prospects of others; and taking or failing to take personnel actions where such taking (or failing to take) such actions is in violation of law, rule or regulation. The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

## COUNT IV

**(Violations of Title VII of the Civil Rights Act of 1964, as amended - Based Upon Race)**

Against Defendant Environmental Protection Agency

111.    The foregoing paragraphs 1-110 are realleged and incorporated by reference herein.

112.    The relevant Defendant's conduct as alleged herein constitutes discrimination based on race in violation of Title VII.  This discrimination also encapsulates other prohibited personnel practices, including but not limited to race-based:  misuse of authority; obstruction of the right to compete for a position;  influencing the withdrawal of one or more persons from competition to improve the prospects of others; and taking or failing to take personnel actions where such taking (or failing to take) such actions is in violation of law, rule or regulation. The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

## COUNT V
### (Disparate Treatment Based Upon Age)

Against Defendant Environmental Protection Agency

113.    The foregoing paragraphs 1-112 are realleged and incorporated by reference herein.

114.    The relevant Defendant's conduct as alleged above constitutes illegal disparate treatment in violation of the ADEA.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

## COUNT VI
### (Disparate Treatment Based Upon Race)

Against Defendant Environmental Protection Agency

115.    The foregoing paragraphs 1-114 are realleged and incorporated by reference herein.

43

116.    The relevant Defendant's conduct as alleged above constitutes disparate treatment in violation of Title VII.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

## COUNT VII
### (Disparate Treatment Based upon Sex)

Against Defendant Environmental Protection Agency

117.    The foregoing paragraphs 1-116 are realleged and incorporated by reference herein.

118.    The relevant Defendant's conduct as alleged above constitutes disparate treatment in violation of Title VII.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

## COUNT IX
### (Continuing Hostile Work Environment)

Against Defendant Environmental Protection Agency

119.    The foregoing paragraphs 1-118 are realleged and incorporated by reference herein.

120.    The relevant Defendant's conduct as alleged above constitutes a continuing hostile and abusive work environment in violation of Title VII and the ADEA.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

## COUNT X
### (Reprisal Based Upon Previous EEO Activity)

Against Defendant Environmental Protection Agency

121.    The foregoing paragraphs 1-120 are realleged and incorporated by reference herein.

122.    The relevant Defendant's conduct as alleged above constitutes reprisal for engaging in prior EEO activity prior to Plaintiff's removal from federal service.   The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

## COUNT XI

### (Violations of the First Amendment - Freedom of Speech - *Bivens* Action)

Against Defendants McCarthy, Perciasepe, Jones, Wise and the Unknown Named EPA Officials

123.    The foregoing paragraphs 1-122 are realleged and incorporated by reference herein.

124.    The United States Supreme Court, in *Bivens*, recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

125.    The relevant Defendant's intentional conduct allegedly constitutes undue government interference and restriction upon Plaintiff's fundamental rights of association and political speech, while acting under color of federal authority in their respective capacities and  in violation of fundamental First Amendment principles, including but not limited to his ability, while enjoying a related due process right to continued employment, to state his grievances through acts of protected whistleblowing and, in addition, provide relevant information to The United States Congress, and through his representatives to the media.   The relevant Defendants' conduct as alleged above also constitutes reprisal for engaging in such protected activity, and innumerable violations of Plaintiff's fundamental unenumerated privacy rights.

126.     Defendants McCarthy, Perciasepe, Jones, Wise and the Unknown Named EPA Officials allegedly unlawfully and intentionally deprived Plaintiff of his fundamental First Amendment rights in connection with and arising from his protected activities, while enjoying said property right, of providing disclosures of alleged government corruption to the Office of Special Counsel, the United States Department of Justice, the United States Congress and through them to the media.

## COUNT XII

**(Violations of the Fourth Amendment - Unlawful Search and Seizure - *Bivens* Action)**

Against Defendants McCarthy, Perciasepe, Machen, Cohen, Smith, Elkins, Kaminsky, Jones, Monell, the Unknown Named EPA Officials and the Unknown Named DoJ Officials

127.     The foregoing paragraphs 1-126 are realleged and incorporated by reference herein.

128.     The United States Supreme Court, in *Bivens*, recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

129.     The relevant Defendant's alleged intentional conduct constitutes, *inter alia*, unlawful search and seizure and inherently related invasion of privacy for use of and undue reliance upon unreliable informants, including but not limited to a self-interested, anonymous informant who expressed animus and clear bias regarding Plaintiff - even going so far as accusing Plaintiff (in her anonymous, perjurious disclosure to the EPA IG which was never authenticated nor subject to scrutiny) of being able to retroactively alter time and attendance records - which allegedly led Kaminsky, with the blind approval of Inspector General Elkins, Machen, Cohen and, especially,

Jim Smith, to examine and perpetuate this unfounded allegation concerning Plaintiff while they continued to investigate him.

130.    The above-described dependence upon allegedly unreliable informants - never adequately analyzed for bias or adequate cause (or anything else) - subsequently formed the basis for the many unconstitutional investigations of Plaintiff which followed.

131.    Further, and in the context of his alleged criminal obstruction of numerous investigations, Jim Jones (and his "investigator" Monell) not only claim (under Jim Jones' oath) to have received the "green light" from Inspector General Elkins (and his staff) to conduct their illicit investigation, without basis or cause, but Jones and Monell also allegedly conducted an illegal search and seized information from Plaintiff's "timekeeper" during the course of the investigation ordered by Jim Jones (which Jones claims under oath was authorized by the EPA IG) and allegedly carried out in a thoroughly unconstitutional manner by Monell.

## COUNT XIII

### (Violations of the Fifth Amendment - Equal Protection under the Due Process Clause - *Bivens* Action)

Against Defendants McCarthy, Perciasepe, Machen, Cohen, Smith, Elkins, Kaminsky, Jones, Monell, the Unknown Named DoJ Officials and the Unknown Named EPA Officials

132.    The foregoing paragraphs 1-131 are realleged and incorporated by reference herein.

133.    The United States Supreme Court, in *Bivens*, recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

134.    The United States Government, and the defendants above, must always afford equal protection of the laws in federal employment actions, including in choosing who (and who not) to investigate and threaten with deprivation of liberty and property.

135.    Plaintiff's reasonable expectation in continued employment was illegally and intentionally taken away in a disparate fashion when a similarly-situated younger comparator female, Beth Craig, was allegedly rewarded for her political expedience and allowed to retire after allegedly committing massive time and attendance fraud during and within the context of the employment of John Beale.

136.    Such unequal, intentional disparate treatment also included no meaningful investigation of the similarly-situated comparator's malfeasance, and thus there could exist no adequate reason for taking away Plaintiff's property - notwithstanding the inadequacy of notice and procedural unfairness.

## COUNT XIV

### (Violations of the Fifth Amendment - Deprivation of Property under the Due Process Clause - *Bivens* Action)

Against Defendants McCarthy, Jones, Wise and the Unknown Named EPA Officials

137.    The foregoing paragraphs 1-136 are realleged and incorporated by reference herein.

138.    The United States Supreme Court, in *Bivens*, recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

139.    Plaintiff had a reasonable expectation to continued property interest in employment.

140.    The above defendants exercised deliberate, intentional indifference to the rights of Plaintiff in removing him from federal service, in that they were without adequate reason and, allegedly, based such deprivation upon false information, without regard to the process Plaintiff was due and otherwise not in accordance with federal law or the United States Constitution. This included, but was not limited to, numerous illegal investigations allegedly meant to obtain fraudulent support for EPA's pretextual removal action against Plaintiff

## COUNT XV

### (Violations of the Fifth Amendment - Deprivation of Liberty under the Due Process Clause - *Bivens* Action)

Against Defendants McCarthy, Perciasepe, Machen, Cohen, Smith, Elkins, Kaminsky, Jones, Monell, and the Unknown Named EPA Officials and the Unknown Named DoJ Officials

141.    The foregoing paragraphs 1-140 are realleged and incorporated by reference herein.

142.    The United States Supreme Court, in *Bivens*, recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

143.    The relevant Defendants' alleged intentional conduct, in addition to violating Plaintiff's reasonable expectation to continued employment absent adequate reason for taking away his property, unconstitutionally denied Plaintiff a hearing before being falsely labeled as a "criminal" (including in written and oral testimony before Congress, without giving Plaintiff any opportunity to respond) and thus permanently stigmatized as a "criminal."

144.    Defendants McCarthy, Perciasepe, Machen, Cohen, Smith, Elkins, Kaminsky, Jones, Monell and the Unknown Named EPA Officials and the Unknown Named DoJ Officials,

whether their actions took place in the context of one or more than one illegal investigation of Plaintiff, all attempted to append such a label to Plaintiff, without any indicia of truth underlying their slurs, or their pretextual cover for discrimination that such disparagement provided to the above defendants.

## COUNT XVI

**(Violations of the Fifth Amendment - Compelled Self-Incrimination - *Bivens* Action)**

Against Defendants McCarthy, Elkins, Kaminsky, Jones, Monell and the Unknown Named EPA Officials

145.    The foregoing paragraphs 1-144 are realleged and incorporated by reference herein.

146.    The United States Supreme Court, in *Bivens*, recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

147.    The relevant Defendants' allegedly intentional conduct constitutes, *inter alia*, violations of the *Garrity* doctrine,  *Garrity v. New Jersey*, 385 U.S. 493 (1967), and the inexplicable failure to follow the 2005 instructions of the Department of Justice concerning the use of Inspector General personnel (or even the use of personnel like Monell, Wise, and EPA attorneys, to name but a few) to conduct interrogations such as the illegal "interviews" and "investigations" seen here - and their disastrous impact - about which Defendants had limited competence, but which were deeply biased and outcome determinative.

## COUNT XVII

**(Violations of the Administrative Procedure Act)**

Against the Environmental Protection Agency

148.    The foregoing paragraphs 1-147 are realleged and incorporated by reference herein.

149.    The Administrative Procedure Act ("APA') provides a cause of action for persons aggrieved by agency actions, findings and conclusions that are contrary to constitutional right, power, privilege or immunity.  Sovereign immunity is expressly waived under 5 U.S.C. §702 where Plaintiff seeks non-monetary APA relief.

150.    The EPA's decision-making process concerning Plaintiff was deeply fraught with procedural transgression, and entirely lacking in due process or any indicia of fairness - at times allegedly amounting to criminal behavior of EPA personnel (ranging from Administrator McCarthy to members of the IG staff and Office of General Counsel), on one end of the spectrum, to merely unequivocal harmful procedural error, on the other.

151.    Injunctive relief is appropriate to place Plaintiff into a Senior Executive Service or some equivalent grade and pay band commensurate with his experience and expertise.

152.    Injunctive relief is also required to (a) *compel* the withdrawal of the defective Notice of Proposed Removal issued to Plaintiff and, (b) *enjoin* the final removal action concerning Plaintiff from going into effect, and therefore nullify agency actions, findings and conclusions that are contrary to Plaintiff's constitutional rights, powers, privileges or immunities (including but not limited to vitiating the use by EPA officers, including defendant and Proposing Official Wise, of an inaccurately-drafted, private, privileged document in order to pressure Plaintiff's colleagues to execute sworn statements cited in the NPR and the final removal action, and (c) *strike* the inaccurate DoJ debriefing document in its entirety and replace it, as noted below, with a statutorily-required corrected version to be maintained (only) in the closed DoJ case file of Plaintiff.  Also, due to the length of time elapsed between the Plaintiff being notified that the

Hernandez Sundy policy was being scrutinized (*i.e.*, that responsible EPA officials - ultimately

but not limited to Wise and Jim Jones - might deem the policy improper) and the time of his

removal, as well as the failure of the MSPB to act on or properly dispose of Plaintiff's appeal,

and the above-referenced vitiation of agency actions, findings and conclusions that are contrary

to Plaintiff's constitutional rights, powers, privileges or immunities, it is further appropriate that

(d) EPA be enjoined from any form of administrative discipline concerning Plaintiff that was not

imposed upon comparator employee Beth Craig, or upon Oscar Hernandez or upon John Beale.

## COUNT XVIII

### (Violations of the Privacy Act)

Against the Environmental Protection Agency and the Department of Justice, on behalf of the
United States of America

153.     The foregoing paragraphs 1-152 are realleged and incorporated by reference herein.

154.     The federal Privacy Act ("Privacy Act") provides another cause of action for persons

aggrieved by agency actions.

155.     The Privacy Act protects Plaintiff against the unauthorized disclosure, without the

consent of Plaintiff and without the existence of statutory exception, of private, privileged

information to persons not otherwise authorized to receive it, where *Bivens* may not provide a

remedy for the government conduct.  In a dreadful display of alleged lawlessness and pure hubris

by the DoJ and Kaminsky, as described *supra*, private (and inaccurate) information about the

Plaintiff in possession of the DoJ was unlawfully disseminated to EPA OGC and to the Deciding

and Proposing Officials.  Plaintiff only discovered the existence of the above-described illegally-

disseminated Justice Department file document upon receipt of the NPR and immediately

challenged its inclusion in the Agency File - until the time that it was relied upon in the final

removal action, the EPA willfully misrepresented the required disclosure, and the DoJ willfully

withheld information concerning required disclosure both before, after, and at the time of

informing the EPA IG (but not the Plaintiff) that charges would not be pursued.  At no time did

Plaintiff consent to the illegal disclosure, nor under any circumstances would he have agreed

with the deliberately erroneous information contained therein.

156.    The highly improper DoJ and IG violations of the Privacy Act, in disseminating

Plaintiff's private, privileged information without consent or exception, were causative factors in

the pretextual, false information submitted to EPA, and led directly to another illegal (and

biased) investigation by the Proposing Official in Plaintiff's removal action from EPA, as well as

Plaintiff being characterized in a defamatory, stigmatizing fashion, and were particularly useful

to the EPA in formulating their alleged discriminatory pretext for unconstitutional eradication of

Plaintiff's property rights.

157.    By their very nature, this illegally-disseminated wrongfully-withheld information had an

adverse effect on Plaintiff.  It was, allegedly by design, a proximate cause of several unlawful

EPA investigations of Plaintiff.  The information contained in the DoJ record was also erroneous

and misleading, which is a devastatingly illicit violation of core privacy interests, and caused

entirely unwarranted damage to the life of an extraordinary scientist.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff demands judgment against Defendants and in favor of Plaintiff

as follows:

A.    **Under COUNT I**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES

level or some equivalent grade and pay band commensurate with his experience and expertise,

with all attendant back pay, benefits and other properly-offset emoluments of employment: (2)

awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

B.      **Under COUNT II**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

C.      **Under COUNT III**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him;

(4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

D.    **Under COUNT IV**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

E.    **Under COUNT V**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

F.      **Under COUNT VI**, that  Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

G.      **Under COUNT VII**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

H.      **Under COUNT VIII**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of

employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

I.      **Under COUNT IX**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

J.      **Under COUNT X**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with his experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until he reaches an age when he would have voluntarily retired from federal

service but for EPA management's discriminatory/retaliatory mistreatment of him; (4) awarded costs and reasonable attorneys' fees at the Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon; and (5) awarded other damages and further relief as deemed just.

K.      **Under COUNT XI**, that this Court declare that the conduct of the relevant Defendants, while acting under color of federal authority, violated the constitutional rights of Plaintiff and award Plaintiff compensatory and punitive damages in an amount to be proved at trial against the relevant Defendants so for their violations of Plaintiff's constitutional rights committed while acting under color of federal authority.

L.      **Under COUNT XII**, that this Court declare that the conduct of the relevant Defendants, while acting under color of federal authority, violated the constitutional rights of Plaintiff and award Plaintiff compensatory and punitive damages in an amount to be proved at trial against the relevant Defendants so for their violations of Plaintiff's constitutional rights committed while acting under color of federal authority.

M.      **Under COUNT XIII**, that this Court declare that the conduct of the relevant Defendants, while acting under color of federal authority, violated the constitutional rights of Plaintiff and award Plaintiff compensatory and punitive damages in an amount to be proved at trial against the relevant Defendants so for their violations of Plaintiff's constitutional rights committed while acting under color of federal authority.

N.      **Under COUNT XIV**, that this Court declare that the conduct of the relevant Defendants, while acting under color of federal authority, violated the constitutional rights of Plaintiff and award Plaintiff compensatory and punitive damages in an amount to be proved at trial against the

relevant Defendants so for their violations of Plaintiff's constitutional rights committed while acting under color of federal authority.

O.      **Under COUNT XV**, that this Court declare that the conduct of the relevant Defendants, while acting under color of federal authority, violated the constitutional rights of Plaintiff and award Plaintiff compensatory and punitive damages in an amount to be proved at trial against the relevant Defendants so for their violations of Plaintiff's constitutional rights committed while acting under color of federal authority.

P.      **Under COUNT XVI**, that this Court declare that the conduct of the relevant Defendants, while acting under color of federal authority, violated the constitutional rights of Plaintiff and award Plaintiff compensatory and punitive damages in an amount to be proved at trial against the relevant Defendants so for their violations of Plaintiff's constitutional rights committed while acting under color of federal authority.

Q.      **Under COUNT XVII**, that this Court should remedy violations of the APA by:

1.      declaring that the conduct of the relevant Defendants, while acting under color of federal authority, violated the Administrative Procedure Act rights of Plaintiff; and

2.      awarding Plaintiff  injunctive relief restoring him to an SES position or some equivalent grade and pay band commensurate with his experience and expertise; and

3.      enjoining (ordering the EPA, through responsible officers Administrator McCarthy, Jim Jones and Wise) to withdraw the Notice of Proposed Removal issued to Plaintiff; and

4.      enjoining (disallowing) the final removal action concerning Plaintiff from going into effect; and

5.	vitiating the use, through a cease and desist order, by EPA officers of the aforementioned inaccurately-drafted, private, privileged and illegally disseminated document in order to pressure Plaintiff's colleagues to execute sworn statements cited in the NPR and the final removal action; and

6.	striking the inaccurate document described in the preceding paragraph in its entirety and replacing it with a statutorily-required corrected version to be maintained (only) in the closed DoJ case file of Plaintiff; and

7.	 enjoining EPA from any form of administrative discipline concerning Plaintiff that was not imposed upon comparator employee Beth Craig, or upon Oscar Hernandez, or upon federal inmate John Beale; and

8.	awarding Plaintiff reasonable attorneys fees; and

9.	ordering other appropriate and proportionate sanctions against EPA officials, in the interests of justice.

R.	**Under COUNT XVIII**, that this Court declare that the conduct of the relevant Defendants, while acting under color of federal authority, violated the Privacy Act and related privacy rights of Plaintiff and award appropriate pecuniary compensatory damages in an amount to be proved at trial against the relevant Defendants, as well as reasonable attorney's fees and other litigation costs.  As well, that this Court direct the DoJ to correct their records concerning Plaintiff that were unlawfully disseminated in violation of the Privacy Act, and that the EPA cease and desist from any reference to or use thereof.

S.	**Under all COUNTS**, award Plaintiff such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all claims and issues so triable.

DATED:  October 7, 2015                    _____/MRH/_____

Mark R. Heilbrun, Counsel of Record
(**D.C. Bar No. 434681**)
HARLAN BRADLEY LLP
Reagan International Trade Building
1300 Pennsylvania Avenue, N.W.
Suite 190, #414
Washington, D.C. 20004
(202) 997-1609

*Counsel for Plaintiff*