# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK WILLIAM TOWNSEND,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Civil Action No. 15-1644 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

In this two-year-old case, the plaintiff, Mark William Townsend, moves for leave to amend his First Amended Complaint ("FAC"), ECF No. 35, after twenty of the plaintiff's twenty-one counts were dismissed for failure to state a claim upon which relief can be granted, *see Townsend v. United States, et al.*, 236 F. Supp. 3d 280 (D.D.C. 2017) ("*Townsend I*"). Specifically, the plaintiff seeks to add a number of allegations to his 101-page FAC, while dropping some claims entirely, in an attempt to "cure" his complaint. *See generally* Pl.'s Mem. Supp. Mot. Leave to Amend Complaint ("Pl.'s Mem."), at 5, ECF No. 56. Defendants, the United States Environmental Protection Agency ("EPA"), the United States Department of Justice ("DOJ"), and the United States of America (collectively, the "agency defendants"), along with ten current and former employees of the EPA and DOJ (collectively, the "individual defendants"),[1] oppose the plaintiff's motion to amend his complaint a second time, arguing that

---

[1] The individual defendants include the following ten persons with their titles as provided in the complaints: (1) Regina McCarthy, Administrator of the EPA; (2) Robert Perciasepe, Deputy Administrator of the EPA; (3) James Jones, Assistant Administrator for the Office of Chemical Safety and Pollution Prevention, EPA; (4) Louise Wise, Deputy Assistant Administrator for the Office of Chemical Safety and Pollution Prevention, EPA; (5) Martha Monell, Deputy Director of Management, Office of Pesticides Program, EPA; (6) Mark Kaminsky, Special Agent for the EPA, Office of the Inspector General; (7) Arthur Elkins, EPA Inspector General; (8) Ronald Machen, United States Attorney for the District of Columbia; (9) Vincent Cohen, Jr., former Principal Assistant United States Attorney for the District of Columbia and Acting United States Attorney for the District of Columbia; (10) James Smith, Assistant United States Attorney; and Unknown Named Officials in both the DOJ and the EPA. FAC ¶¶ 18–

1

any amendment would be futile and would "unduly prejudice defendants." Agency Defs.' Opp'n Pl.'s Mot. Leave to Amend Complaint ("Agency Opp'n"), at 4–6, ECF No. 59; Individual Defs.' Opp'n Pl.'s Mot. Leave to Amend Complaint ("Indiv. Opp'n"), at 3–5, ECF No. 58. For the most part, the defendants are correct. The changes in the plaintiff's proposed Second Amended Complaint ("SAC") "cure" a single count in the complaint, such that only Count I, in part, and Count II presents sufficient plausibility to withstand a motion to dismiss. Accordingly, for the reasons set forth below, the plaintiff's motion for leave to amend the first amended complaint is granted in part and denied in part.

## I. BACKGROUND

The underlying factual allegations at issue in this case are detailed extensively in *Townsend I* and will not be repeated here. Only those allegations necessary for resolving the plaintiff's instant motion are summarized as part of the analysis of the sufficiency of the challenged claims.

With respect to the procedural history, the plaintiff initiated this case in October 2015 by filing a sixty-one-page complaint, separated into eighteen counts, alleging a variety of violations of federal law by the individual and agency defendants. *See generally* Compl., ECF No. 1. The plaintiff's claims all stem from investigations into the plaintiff's role in time-and-attendance fraud at the EPA, his demotion and the removal of his management responsibilities, and the eventual termination of his employment. *See generally id.*

On February 11, 2016, after the agency and individual defendants both filed motions to dismiss, *see* Indiv. Defs.' Mot. Dismiss, ECF No. 33; Agency Defs.' Mot. Dismiss, ECF No. 34,

---

21, 23–30, ECF No. 35; Proposed Second Amended Complaint ("SAC") ¶¶ 18–20, 23–30, Ex. 1 to Pl's Motion to Amend/Correct FAC, ECF No. 56-1.

the plaintiff filed a 101-page first amended complaint, adding 40 additional pages alleging violations of federal law separated into 21 different counts, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*; the Privacy Act, 5 U.S.C. § 552a; 42 U.SC. §§ 1983, 1985; and for a number of constitutional violations sounding in tort, *see generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See* FAC ¶¶ 125–91; *id.* ¶¶ 124–74, ECF No. 35. Following renewal by both the agency and individual defendants of their motions to dismiss the FAC, *see* Indiv. Defs.' Mot. to Dismiss FAC, ECF No. 37; Agency Defs.' Mot. to Dismiss FAC, ECF No. 38, Counts II through XXI were dismissed entirely, and the portion of Count I related to the plaintiff's termination was also dismissed, *see Townsend I*, 236 F. Supp. 3d at 326. The only claim in the FAC to survive the defendants' motion to dismiss was the plaintiff's claim in Count I that age was a factor in the plaintiff's alleged demotion, in violation of the ADEA. *Id.* at 305–06.

The plaintiff now proposes a third version of his complaint as a proposed Second Amended Complaint ("SAC"), which raises in seventy-one pages largely the same causes of action in reliance on similar factual allegations as asserted in his FAC.[2]

---

[2] On May 8, 2017, the plaintiff attempted to amend the FAC and, alternatively, requested a final judgment on his dismissed claims, but he failed to attach a proposed amended pleading in accordance with D.D.C. Local Civil Rule 7(i). Pl.'s Mot. Amend, ECF No. 51. Consequently, the plaintiff's motion to amend was stricken for failure to comply with the local rules and the plaintiff's alternative motion for entry of final judgment was denied. *See* Minute Order (May 31, 2017); *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130–131 (D.C. Cir. 2012) (finding no abuse of discretion in denying motion for leave to amend that failed to include a proposed amended complaint, as required by local civil rule).

## II. LEGAL STANDARD

"Under Fed. R. Civ. P. 15(a)(2), when unable to do so as-of-right, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'" *Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016) (quoting Fed. R. Civ. P. 15(a)(2)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of leave lies in the sound discretion of the district court, *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996), but the Court must follow Rule 15's command that leave should be "freely given when justice so requires," *id.* (quoting Fed. R. Civ. P. 15(a)); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Thus, leave to amend may ordinarily be denied based only on sufficient reasons, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.*; *see also Caribbean Broad. Sys.*, 148 F.3d at 1083. A finding of futility is warranted if a proposed claim would not survive a motion to dismiss. *Williams*, 819 F.3d at 471 (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)); *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012); 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed. 2004) (noting that an amendment should be denied when it "clearly is frivolous, advanc[es] a claim or defense that is legally insufficient on its face, or . . . fails to include allegations to cure defects in the original pleading" (footnote omitted)).

## III. DISCUSSION

Defendants argue that allowing the filing of the plaintiff's SAC would be futile because the plaintiff's proposed amendments to the FAC remain insufficient for the claims to survive yet another round of scrutiny on a motion to dismiss. In addition, the defendants point to the burdens generated by allowing the plaintiff to amend his complaint, including that the defendants would have to file additional motions and answers, even after the parties have initiated discovery and exchanged initial disclosures. Agency Opp'n at 6–7. The Court appreciates the burden on defendants associated with investing considerable time and resources to confront essentially the same complaint in repeated rounds of briefing on motions to dismiss. Indeed, the plaintiff is not entitled to *seriatim* advisory opinions apprising him of the deficiencies in different versions of his complaint. Nonetheless, leave to amend shall be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), even though "the grant of leave to amend a complaint might often occasion some degree of delay and additional expense." *Barkley v. U.S. Marshals Serv.*, 766 F.3d 25, 39 (D.C. Cir. 2014) (acknowledging that the "district court has endured a multitude of motions and amendments to the pleadings in this case over the course of more than a decade" and expressing "sympath[y] [for] the court's understandable interest in efficiently administering the litigation," but finding that the court should have granted leave to include new claims by new plaintiffs in the proposed fifth amended complaint).

Here, the plaintiff has failed to cure nearly all of his claims. Specifically, for all the constitutional tort claims raised against the individual defendants (Counts XI–XV), as well as for the civil rights claim under § 1983 (Count XVII), the plaintiff has added no allegations of any significance but instead opts to add legal conclusions and policy arguments that are insufficient to "cure" the claims of any deficiency. Thus, permitting amendment to those five counts would

be futile as the counts would not survive a motion to dismiss.[3] The plaintiff also adds no allegations of any import to Count I (disparate treatment on account of age), Count IX (hostile

---

[3] For the reasons articulated in *Townsend I*, the plaintiff's five constitutional claims fail, first, because the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, precludes the plaintiff's First Amendment (Count XI), Fifth Amendment Equal Protection (Count XIII), and Fifth Amendment Deprivation (Count XIV) claims, and, second, qualified immunity bars the claims under the Fourth Amendment (Count XII) and Fifth Amendment (Count XV). Finally, the plaintiff has made little to no effort to supplement these claims with any additional factual allegations to bolster their plausibility. Indeed, Counts XIII and XIV contain the exact same factual allegations contained in the FAC. *Compare* SAC ¶¶ 247–55 *with* FAC ¶¶ 132–40. With respect to Counts XI, XII, XV, and XVII, the plaintiff has added some additional factual allegations, but none "cures" the legal deficiencies of the claims, as summarized below.

Count XI in the SAC is supplemented with a policy argument cast as an allegation that "[o]ne cannot recognize a 'comprehensive remedial scheme' where the Justice Department has intentionally disclosed information protected under the Privacy Act for the sole purpose of having Plaintiff removed from federal service, and where unknown named defendants have conspired with" some of the individual defendants "to suborn perjury and false statements (and thus circumventing such 'remedial' process) while Plaintiff is attempting to fight such corruption." SAC ¶ 237. Even assuming the truth of the plaintiff's broad-brush accusations, the plaintiff cites no legal authority, and the Court is unaware of any, that supports the notion that CSRA preclusion exempts situations where the DOJ allegedly "intentionally disclosed information protected under the Privacy Act" or where individuals conspired to suborn perjury and false statements.

The SAC's Count XII alleges a violation of the Fourth Amendment where information was "seized" from an EPA employee who worked as the plaintiff's timekeeper. *Id.* ¶ 244. This claim was dismissed in *Townsend I* because the timesheets "were in the possession or control of a third party." *Townsend I*, 236 F. Supp. 3d at 324 (internal quotations omitted). Consequently, the plaintiff had no reasonable expectation of privacy and no Fourth Amendment search occurred, and, "*ipso facto*, there was no violation of constitutional right, let alone a clearly established one." *Id.* The plaintiff seeks to cure this deficiency by adding the conclusory allegation that "[p]laintiff has a reasonable expectation in privacy in myriad ways – not to be subjected to undue reliance upon unreliable informants; not to be falsely implicated by a subordinate to Hernandez who was threatened with loss of job and liberty; and not to be wrongly removed based upon contrived guesswork of 'investigator' Monell." SAC ¶ 245. None of these assertions changes the fact that the timesheets were in the possession of a third party, and thus no violation of a constitutional right occurred when the timesheets were seized in the course of an investigation. *See Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.").

The SAC's Count XV alleges that the plaintiff was "falsely labeled as a 'criminal' (including in written and oral testimony before Congress, without giving Plaintiff any opportunity to respond) and thus permanently stigmatized as a 'criminal.'" SAC ¶ 258. This claim was dismissed because the D.C. Circuit has allowed Fifth Amendment stigma cases to proceed only "when the plaintiff's allegations satisfy the requirements of the 'stigma-plus rule' set out in *Paul v. Davis*." *Townsend I*, 236 F. Supp. 3d at 324. The stigma-plus rule is satisfied "only where plaintiffs show, in addition to reputational harm, that (1) the government has deprived them of some benefit to which they have a legal right . . . or (2) the government-imposed stigma is so severe that it broadly precludes plaintiffs from pursuing a chosen trade or business," *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010) (internal quotations and citations omitted). While the plaintiff has a legal right to be considered for government employment, he does not have a legal right to government employment itself. *See Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983); *Marin v. U.S. Dep't of Defense*, No. 95-2175, 1997 WL 749404, at *3 (D.D.C. Nov. 25, 1997). Thus, he does not satisfy the first prong of the stigma-plus rule. As for the second prong, the plaintiff adds in the SAC the conclusory allegation that "[d]ue to the severity of the constitutional wrongdoing, [he] was subjected to a 'stigma-plus' outcome – government wrongdoing so severe that it has precluded him from *ever* pursuing his chosen trade or business." SAC ¶ 259 (emphasis in original). Despite the plaintiff's claims that he was "destroyed in his professional opportunities (for life), and subjected to what otherwise is defamation *per se*," *id.* ¶ 262, he provides no details about how he has been prevented from pursuing his chosen trade or business; what trades he wishes, but has been unable, to engage in; or how he has been precluded from engaging in prospective business opportunities. *See Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995) (concluding that stigma

6

work environment), or Count XVI (Privacy Act). Thus, for the same reasoning articulated in *Townsend I*, Counts IX and XVI are not cured and are deemed futile, whereas Count I survives only to the extent the plaintiff claims age discrimination in connection with his demotion.[4] The plaintiff's remaining claims against the agency defendants are assessed below.

---

was not present when the plaintiff had proffered only "a simple assertion that he ha[d] been unable to find employment in his chosen field"). Further, while an opportunity to be heard is essential "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), the plaintiff not only alleges that he was interviewed multiple times, FAC ¶ 40, SAC ¶¶ 43–47, 110, and given this opportunity to tell his view of events, he also "permitted his story to be profiled" in the *Wall Street Journal*, "*defended* himself" against the defendants' claims, and responded to the defendants' actions in his own complaint and allegations. SAC ¶¶ 82, 261 (emphasis in original). This ability to "tell his own story" means that "he was, as a matter of law, given all the process that was due." *Jefferson v. Harris*, 170 F. Supp. 194, 211 (D.D.C. 2016). In this context, the plaintiff's own allegations undercut an essential element of his Fifth Amendment claim and, in any event, "the plaintiff's assertions are so vague and insufficiently specific that they cannot give rise to a plausible inference that the 'stigma is so severe that it broadly precludes plaintiff[ ] from pursuing a chosen trade or business," *Townsend I*, 236 F. Supp. 3d at 324 (quoting *Gen. Elec. Co.*, 610 F.3d at 121).

Finally, the plaintiff's claim under § 1983 (Count XVII) was dismissed in *Townsend I* because "[a]ll of the defendants in this action were acting as federal officials, and the plaintiff plead[ed] no facts that would give rise to a plausible inference that any of their actions were based on 'significant encouragement' of a state government." *Townsend I*, 236 F. Supp. 3d at 325. As § 1983 extends only to officials acting under color of state law, the plaintiff's claim did not apply to federal officials. *Id*. In the SAC, the plaintiff alleges that three of the individual defendants "abandoned threats of federal crimes against Plaintiff, and only threatened a 'minor prosecution . . . with the maximum punishment of a fine only, or imprisonment not exceeding one year,'" and thus claims that "these state actors were not threatening prosecutions 'conducted in the name of the United States by the United States Attorney for the District of Columbia.' Rather, they were acting as local prosecutors subject to [§ 1983]." SAC ¶¶ 284–85. It remains the case, however, that "federal officials are not state actors even when they seek to enforce a District of Columbia statute." *Townsend I*, 236 F. Supp. 3d at 326 (citing *Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005). Consequently, § 1983 simply does not apply.

[4] The plaintiff adds no additional factual allegations to Count I, and thus, the claim survives only to the extent the plaintiff claims age discrimination in connection with his constructive demotion. With respect to Count IX, the plaintiff's claim for hostile work environment, the plaintiff adds only conclusory allegations that "the continuous slurs directed at Plaintiff were sufficiently severe OR pervasive so as to create a hostile working environment," SAC ¶ 215, that "a single incident of harassment may be sufficient to constitute a Title VII violation," *id*. ¶ 216, and that "[t]he relevant Defendant's conduct as alleged above, under the totality of circumstances, constitutes a continuing hostile and abusive work environment in violation of Title VII and the ADEA," *id*. ¶ 217. These allegations, without more, are insufficient to render the claim plausible.

As for Count XVI, the plaintiff alleges DOJ violated the Privacy Act by disclosing information "contained in DoJ's system of (cooperating witness) records, to the EPA Office of General Counsel[.]" SAC ¶ 267. This claim was dismissed because the information fell under the "routine use" exception allowing "the use of such record for a purpose which is compatible with the purpose for which it was collected." *Townsend I*, 236 F. Supp. 3d at 318 (quoting *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 9 F.3d 138, 144 (D.C. Cir. 1993). In *Townsend I*, the plaintiff's argument that the disclosures' "purpose" was to "remov[e] Plaintiff from federal service" was rejected because the plaintiff "ha[d] not alleged any specific facts that plausibly support[ed] his claim that the 'purpose' for the disclosure was so narrow in scope." *Id*. (internal quotations omitted). The plaintiff offers little to remedy this deficiency, offering conclusory allegations that "[t]he information contained in the DoJ record was intentionally erroneous and misleading and was intended (as threatened) to result in the removal of Plaintiff from government service." SAC ¶ 276. As *Townsend I* observed, "based on the plaintiff's own allegations, the plain and plausible inference is that the 'purpose' of DOJ's disclosure was to share information regarding time-and-attendance

7

### A. Age Discrimination Claims: Counts II, V, and VIII

#### 1. Count II

Count II alleges a "pattern or practice" age-based disparate treatment claim. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977) (discussing "pattern or practice" disparate treatment claims); *see also Aliotta v. Bair*, 614 F.3d 556, 562 (D.C. Cir. 2010) (explaining that "[d]isparate treatment claims brought under the ADEA may involve 'an isolated incident of discrimination against a single individual, or . . . allegations of a "pattern or practice" of discrimination affecting an entire class of individuals.'" (quoting *Palmer v. Shultz,* 815 F.2d 84, 90 (D.C. Cir. 1987)); *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (applying the *Teamsters* framework to the ADEA). Count II in the FAC was dismissed because the facts "as alleged in the complaint d[id] not give rise to a plausible inference of a regular practice of age discrimination at the EPA." *Townsend I*, 236 F. Supp. 3d at 306. The plaintiff's broad-brush, unspecific claim that "myriad other older similarly-situated workers subject to the same supervisory chain of command[ ] were treated in the same or highly similar manner as the plaintiff" was deemed "conclusory" and could not "support an inference that age discrimination was the EPA's 'standard operating procedure.'" *Id.* (internal quotations omitted); *see also Int'l Bhd. of Teamsters*, 431 U.S. at 336 (noting that to make out a prima facie case of a pattern or practice claim, a plaintiff must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts" and instead establish that "discrimination was the [employer's] standard operating procedure—the regular rather than the unusual practice").

---

fraud at the EPA with responsible agency officials, who then initiated, by the plaintiff's count, a 'fourth' investigation in April 2014." *Townsend I*, 236 F. Supp. 3d at 319 (citing FAC at 86 ¶ 154).

8

In the SAC, the plaintiff seeks to supplement the FAC with more-specific allegations naming three individuals whom the plaintiff alleges were subjected to "disparate treatment, continuing hostile work environments, intolerable working conditions, and prohibited personnel practices considered constructive adverse actions." SAC ¶ 129. According to the SAC, one of these individuals was told that she "could not apply for branch chief positions for which she was best qualified" because supervisors "wanted to reserve such positions for 'younger, more diverse' EPA employees." *Id.* ¶ 131. This allegation, read in conjunction with the allegations in Count I, namely that the plaintiff was told to "step aside" as branch chief to make room for "younger" employees, is sufficient to "cure" Count II of its deficiencies. The evidence remains thin inasmuch as it is far from clear, even accepting the plaintiff's allegations as true, that discrimination "has been the employer's regular or 'systemwide' pattern or practice," *i.e.*, that the "discrimination 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Aliotta*, 614 F.3d at 562 (quoting *Int'l Bhd. of Teamsters*, 431 U.S. at 335 (alteration adopted)). Nonetheless, the new allegations about older employees are sufficient to nudge the plaintiff's claim into the realm of the plausible by alleging "something more than an isolated, sporadic incident." *Int'l Bhd. of Teamsters*, 431 U.S. at 336 n.16 (quoting 110 Cong. Rec. 14270 (1964) (Statement of Senator Humphrey)). Accordingly, with the new additional allegations, Count II is not deemed futile and the plaintiff may proceed with the amended claim.

### 2. Count V

In Count V, the plaintiff asserts the same claim asserted in the FAC of "disparate treatment" based on age, due to the allegedly less favorable treatment of him as compared to Elizabeth Craig. SAC ¶ 163 ("Craig was treated with kid gloves and not subjected to the same level of scrutiny."). This claim in Count V was dismissed because the plaintiff did not plead

9

Craig's age and Craig is not a plausible comparator. *Townsend I*, 236 F. Supp. 3d at 306–07. In the SAC, the plaintiff supplements his allegations to include Craig's age, 49, SAC ¶ 163, but given the differing circumstances of the misconduct by the plaintiff and his purported comparator, the difference in age alone is insufficient to raise a plausible inference that age was a factor for any alleged disparate treatment between Craig and the plaintiff.[5]

The SAC asserts that John Beale, who was supervised by the proposed comparator, Craig, "admitted to massive time and attendance fraud for *misleading his supervisors* into believing he was on assignment for the Intelligence Community ('IC') when he was doing little to no work for the United States Government and/or for EPA." SAC ¶ 67 (emphasis added). As *Townsend I* emphasized, the more significant fact was that "even if Craig were assumed to be 'significantly younger,' the plaintiff admits that Beale, whom Craig supervised, misled her 'into believing he was on assignment for the Intelligence Community.'" *Townsend I*, 236 F. Supp. 3d at 307 (citing FAC ¶ 61). In other words, unlike the plaintiff, who "narrowly concede[s]" he followed the instructions of a supervisor to submit fraudulent time-and-attendance records, SAC ¶ 56, and apparently never questioned the practice until he was under investigation by both the EPA and DOJ, *see* FAC ¶ 57 (explaining that the plaintiff informed officials and the *Wall Street Journal* that in his previous two branch chief assignments, "both branches contained staff that did no work" and the plaintiff was "informed [ ] that EPA condoned this practice so as not to risk the ire of the union stewards"), the plaintiff alleges only that Craig was misled by her subordinate, *see* SAC ¶ 67.

At bottom, the plaintiff has not shown facts giving rise to a plausible inference that the plaintiff was treated less favorably *because of his age*. *See O'Connor v. Consol. Coin Caterers*

---

[5] Elsewhere in the SAC, the plaintiff alleges that Craig is 50 years old. *See* SAC ¶ 86.

*Corp.*, 517 U.S. 308, 313 (1996). To be sure, the plaintiff now includes a number of colorful allegations about Craig.[6] Even assuming Craig can be said to be "significantly younger" than the plaintiff, however, "[g]iven the inculpatory evidence about the plaintiff's behavior . . . any difference in treatment between Craig and the plaintiff simply does not give rise to a conceivable, let alone plausible, inference that the EPA's 'asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against' the plaintiff when it terminated his employment." *Townsend I*, 236 F. Supp. 3d at 308 (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).[7]

### 3. Count VIII

In *Townsend I*, Count VIII alleging disparate impact based on age discrimination was dismissed for two primary reasons. First, disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups," *Smith v. City of Jackson*, 544 U.S. 228, 239 (2005) (quoting *Int'l Bhd. of Teamsters*, 431 U.S. at 335–36 n.15), whereas the plaintiff here had alleged that an office reorganization was *intentionally* discriminatory

---

[6] According to the plaintiff, "Craig knowingly and willfully" approved time-and-attendance records for EPA employee John Beale "having known that Beale did no EPA work for over a decade." SAC ¶ 164. Although recognizing that Craig claims to have been deceived by Beale, the plaintiff believes this "excuse" to be "utterly implausible" and alleges that Craig "approv[ed] hundreds of thousands of dollars in compensation, luxury travel, fine dining, and virtually everything else that even the fictional James Bond wouldn't have gotten approved." *Id.* ¶ 167.

[7] The plaintiff takes issue with the Court's finding that the plaintiff "admitted" to responsibility for "time-and-attendance fraud." *See* Pl.'s Mem. at 5. Waving away portions of his FAC describing his involvement in time-and-attendance malfeasance, *see, e.g.*, FAC ¶¶ 42–44 (discussing the investigation into the plaintiff's time-and-attendance misconduct); *id.* ¶ 67; *id.* ¶¶ 81–87 (stating that the "pretextual" reason for the termination of the plaintiff's employment was his role in his subordinate's time-and-attendance reporting), the plaintiff now forcefully argues that this conclusion reflected "mistaken presumptions," Pl.'s Mem. at 4. To the extent the plaintiff objects to the finding in *Townsend I* that the FAC's allegations amount to an admission of the plaintiff's involvement in time-and-attendance fraud, the plaintiff's motion may be construed as seeking reconsideration under Federal Rule of Civil Procedure 59(e) rather than leave to amend. His motion, however, falls far short of what is required for a court to reconsider a prior ruling. *See Firestone*, 76 F.3d at 1208 (explaining that the standard for granting Rule 59(e) motions is discovery of new evidence previously unavailable, an intervening change in controlling law, or the need to correct a clear error or prevent manifest injustice). To the contrary, rather than show any error, let alone "clear error," the SAC repeats the allegations underlying this conclusion regarding the plaintiff's admitted involvement in "time-and-attendance fraud." *See, e.g.*, SAC ¶¶ 56–57.

11

against older employees and thus could not be "facially neutral." *See* FAC ¶ 90 (explaining that the office reorganization was intended "to reflect a younger, more 'diverse' management group); *id.* ¶ 91 (stating that the reorganization of the Risk Assessment Division was designed "to 'sweep' older managers from their positions under the pretext of a so-called 'staffing plan'"). Accordingly, "his claim sounds only in terms of disparate treatment." *Schuler v. PricewaterhouseCoopers, LLP*, 421 Fed. App'x 1, 2 (D.C. Cir. 2011). Second, even assuming the office reorganization policy was "facially neutral, the plaintiff's claim still fails because he offers no statistical or other evidence to support his claim that the policy had a disparate impact on older employees," warranting dismissal. *Townsend I*, 236 F. Supp. 3d at 308 (internal quotations omitted).

This claim fares no better in the plaintiff's proposed SAC. The plaintiff merely alleges that "[d]uring discovery and the other cases to be brought, it can easily be shown that the employment practice at issue has had, as noted, a devastating disparate impact that far exceeds the plausibility pleading threshold as it permits – in fact requires – a reasonable inference of disparate impact because the openly discriminatory policy by its very nature has had such an impact upon older white employees." SAC ¶ 206. The plaintiff's circular reasoning is no substitute for "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Jianqing Wu v. Special Counsel*, No. 14-7159, 2015 WL 10761295, at *1 (D.C. Cir. Dec. 22, 2015). At the pleading stage, complaints that fail even to include a "hint that [the plaintiff] has or can obtain statistical evidence" of a disparate impact are insufficient and mere "anecdotal evidence . . . would not—under [D.C. Circuit] case law—permit a reasonable inference of disparate impact." *Id.* at *2; *see also Krodel v. Young*, 748 F.2d 701, 709 (D.C. Cir. 1984) ("Statistical evidence is crucial in disparate impact cases, where plaintiffs need not prove

discriminatory intent but must show that specific employment practices 'select applicants . . . in a racial pattern significantly different from that of the pool of applicants.'" (quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)). The plaintiff's allegations amount to pure speculation that the plaintiff might be able to obtain statistical evidence during discovery. As explained in *Townsend I*, "[s]et against these legal requirements for an adequate disparate impact claim, the plaintiff's allegations fall far short." *Townsend I*, 236 F. Supp. 3d at 309.

### B. Race and Sex Discrimination: Counts III, IV, VI and VII

#### 1. Count III

In Count III, the plaintiff alleges that he "received less favorable treatment because he is a male," comparing himself to Craig and EPA Administrator Gina McCarthy, "both of whom," the plaintiff alleges, "should have been punished administratively and criminally for actions far worse than Plaintiff was improperly investigated and illegally removed for." SAC ¶ 145. Count III was previously dismissed for two reasons. First, the use of Craig as a comparator failed for the same reasons discussed regarding Count V. *See supra* Part III.A.2. Second, McCarthy was deemed an implausible comparator because of her status as EPA Administrator, FAC ¶ 23, whereas the plaintiff held a far different position as a "middle-manager," *id.* ¶ 1, and "Senior Science Advisor," *id.* ¶ 15.[8]

To support this reasserted claim in the SAC, the plaintiff offers little more than what was alleged in the FAC. To the extent the plaintiff relies on Craig's alleged knowledge of her subordinate Beale's time-and-attendance misconduct, such argument fails for the same reasons articulated with respect to Count V. The plaintiff also alleges that "while McCarthy is *now* the Administrator of EPA, she was *during the relevant time period* John Beale's direct supervisor

---

[8] The SAC omits the FAC's description of the plaintiff as a "superlative middle manager." FAC ¶ 1.

13

and enabled Beale to defraud the government for many years." SAC ¶ 146 (emphasis in original). To the extent McCarthy was not the EPA administrator at the time of the alleged discrimination, she was nonetheless part of "EPA upper management," SAC ¶ 31, and thus McCarthy and the plaintiff's employment situations were plainly not even close to "nearly identical," *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015).

### 2. Count IV

In Count IV, the plaintiff alleges that he was treated less favorably than a prior supervisor, Oscar Hernandez, who is "Hispanic, while Plaintiff is white." SAC ¶ 155. It remains the case, however, that Hernandez is not a plausible comparator. In *Townsend I*, Hernandez was rejected as a comparator because "Hernandez retired prior to any investigation by EPA officials into time-and-attendance fraud." *Townsend I*, 236 F. Supp. 3d at 310. The plaintiff now alleges that Hernandez retired "nearly a year *after* investigation by EPA officials of his ordering Plaintiff to accommodate [a subordinate], and following his false narrative implicating Plaintiff." SAC ¶ 154 (emphasis in original). Nonetheless, as alleged in the FAC, investigators had sought to interview Hernandez by March 15, 2013, but he "retired effective March 12, 2013, and disappeared to his family's native South American country - where he stayed secreted for several months." FAC ¶ 68. By contrast, in his own account of his employment history, the plaintiff's employment was terminated after five separate investigations into his role in time-and-attendance fraud at the EPA. FAC ¶¶ 7–8, 82; SAC ¶ 8. Thus, unlike for Hernandez, EPA was able to conduct a thorough inquiry of the plaintiff's alleged misconduct while the plaintiff was still employed with the EPA. Given that Hernandez retired before investigators were even able to interview him, no inference can be drawn that the plaintiff was treated less favorably than Hernandez on account of his race.

14

Further, the plaintiff states he was replaced by "far less experienced and less competent African-Americans," SAC ¶ 159, and "thus there is sufficient evidence to infer pretext and a plausible inference can be drawn that he was terminated because of his race," *id.* ¶ 158. Aside from this conclusory assertion, however, the plaintiff provides no allegations to support his claim that the replacements were, in fact, "less experienced" and "less competent." Further, because the plaintiff now "narrowly concedes" that he followed his supervisor's instructions to commit time-and-attendance misconduct, "the mere fact that his replacements were less qualified would not be sufficient to infer pretext." *Townsend I,* 236 F. Supp. 3d at 310.[9]

### C. Count X

In Count X, the plaintiff alleges he was retaliated against for complaints he made to the EPA's Office of Civil Rights ("OCR"). SAC ¶¶ 219–30. Count X was originally dismissed because "no plausible inference [could] be drawn of a causal relationship between the protected activity and" the termination of the plaintiff's employment. *Townsend I,* 236 F. Supp. 3d at 316. Two deficiencies stood out. First, the "lengthy time lag between" the filing of OCR complaints and the termination of the plaintiff's employment "undercut[ ] any inference of a causal relationship." *Id.* at 317; *see also Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (explaining that in order to infer a causal relationship on the basis of "temporal proximity," the protected activity and the materially adverse action must be "very close" in time). Second, and more important, "the plaintiff's allegations indicate[d] that his complaints to OCR were made

---

[9] As in the FAC, Counts VI and VII "allege 'disparate treatment' based on race and sex respectively" and largely "repeat the allegations in Counts III and IV, both of which allege 'disparate treatment' under Title VII." *Townsend I,* 236 F. Supp. 3d at 311 n.12. Accordingly, because "Counts VI and VII do not purport to be based on a different law, nor do they assert any different or new evidence . . ., they amount to mere surplusage" and would be dismissed for the same reasons as Counts III and IV. *Id.*

15

*after* McCarthy and Perciasepe gave the order to terminate the plaintiff." *Townsend I*, 236 F. Supp. 3d at 317 (emphasis in original).

In the SAC, the plaintiff attempts to address the first problem by alleging that "EPA HR was harshly criticized during this precise time period for taking inordinate periods of time to render discipline, which publicly explained (and criticized) any 'lengthy time lag' between Plaintiff filing EPA Office of Civil Rights complaints, and the retaliation by the EPA for Plaintiff having done so – and thus EPA HR incompetence (also publicly established) supports an inference of a causal relationship." SAC ¶ 222. The plaintiff is too clever by half. To whatever extent EPA HR may be dilatory about discipline, that fact assumed to be true does not render the plaintiff's claim any more plausible. First, the plaintiff alleges that it was Administrator McCarthy, not "EPA HR," who ordered the termination of the plaintiff's employment. SAC ¶ 112. Second, as the Supreme Court observed in *Breeden*, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Breeden*, 532 U.S. at 273 (citing cases). Absent close temporal proximity, an inference cannot be drawn that there is a causal relationship between protected activity and an adverse employment action. The plaintiff must show more to survive a motion to dismiss.

As for the second problem, although the plaintiff makes clear that McCarthy had already given the order to terminate the plaintiff's employment *before* the plaintiff made his OCR complaints, the plaintiff now emphasizes that McCarthy "did not give the *final* order to terminate Plaintiff until well after Plaintiff filed (and subsequently consolidated) his OCR matters." SAC ¶ 225 (emphasis in original). The plaintiff's effort to draw a distinction between "initial" and

"final" orders for termination of employment has no legally cognizable basis—what matters is whether a plaintiff "engaged in a statutorily protected activity," "suffered a materially adverse action," and "a causal connection existed between the two." *Nurriddin v. Bolden*, 818 F.3d 751, 758 n.6 (D.C. Cir. 2016) (citing *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)). The adverse action in this instance is the termination of the plaintiff's employment. The plaintiff plainly alleges that McCarthy gave the order to terminate the plaintiff's employment *before* the plaintiff filed complaints with OCR. FAC ¶¶ 88–89; *see also id*. ¶¶ 81–82 (attributing to McCarthy an intent to find "a sacrificial scapegoat" and "to initiate an illegal investigation in support of removal proceedings regarding Plaintiff," which allegedly prompted "an(other) unconstitutional investigation of Plaintiff" in October 2013); SAC ¶ 225. These allegations, which assert that the termination of the plaintiff's employment was a *fait accompli*, sever any plausible causal connection that could be inferred between the plaintiff's OCR complaints and the termination of his employment.

## IV. CONCLUSION

For the foregoing reasons, with the exception of Counts I and II, the plaintiff's allegations in his SAC fail to "cure" the FAC's deficiencies. Accordingly, the plaintiff's motion for leave to amend his first amended complaint is GRANTED in part and DENIED in part. Count I may proceed to the extent the plaintiff alleges age discrimination in connection with his constructive demotion, and Count II may proceed in full. The plaintiff's motion is denied as to all remaining counts.

The parties are directed to file a Joint Meet and Confer Report, as required by Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3(d), by October 30, 2017. *See* Standing Order, ¶ 3(a), ECF No. 3.

17

An order consistent with the Memorandum Opinion will be entered contemporaneously.

Date: October 16, 2017

_____
BERYL A. HOWELL
Chief Judge