## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK WILLIAM TOWNSEND,

Plaintiff,

v.

UNITED STATES OF AMERICA *et al.*,

Defendants.

Civil Action No. 15-1644 (BAH)

**Judge Beryl A. Howell**

## MEMORANDUM OPINION

This Court once again considers a dispositive motion in this ten-year-old age-discrimination case concerning a job reassignment that lasted four days before the plaintiff, Mark William Townsend, was terminated due to his role in a multi-year time-and-attendance fraud against his employer, the Environmental Protection Agency ("EPA"). For the reasons explained below, defendants' Motion to Dismiss, ECF No. 106, is granted, and defendants' Second Amended Complaint ("SAC"), ECF No. 66, is dismissed.

## I.    BACKGROUND

The facts in this matter are described thoroughly in *Townsend v. United States* ("*Townsend III*"), No. 15-1644 (BAH), 2019 WL 4060318 (D.D.C. Aug. 27, 2019). The pertinent facts for the disposition of this motion are described below.

### A.    Factual Background

Plaintiff began working at EPA in 1980 and was over the age of 40 at the time of the events giving rise to this litigation. *See Townsend III*, 2019 WL 4060318, at *2. He held various positions at EPA, as parts of the agency were periodically reorganized. *See id.* From 2005 until the alleged wrongful employment action, plaintiff was a Supervisory Biologist (Branch Chief) in the Risk Assessment Division of EPA's Office of Pollution Prevention and Toxics. *Id.*; SAC ¶ 1.

1

In 2012, the EPA's Office of the Inspector General began investigating plaintiff for his involvement in a time-and-attendance fraud perpetrated by his subordinate. *See Townsend v. United States* ("*Townsend I*"), 236 F. Supp. 3d 280, 292 (D.D.C. 2017).

In 2013, EPA began a reorganization of plaintiff's Office, which ultimately led to the dissolution of his Branch. *Townsend III*, 2019 WL 4060318, at *2. As a result, plaintiff was reassigned to a Senior Advisor (Biologist) position. *See id.* at *6. Plaintiff alleges he was "openly pressured by his putative supervisor . . . to 'step aside' as branch chief in order to make room for 'younger' employees." SAC ¶ 41. Notably, the reassignment "did not change [plaintiff's] job series or pay grade, nor did it reduce his pay, benefits, or working hours." *Townsend III*, 2019 WL 4060318, at *6.

Just four days after the reassignment became effective, on July 31, 2014, plaintiff was placed on leave and physically escorted out of the building due to his role in the time-and-attendance fraud that had been under investigation. *Id.* at *7. Plaintiff was officially terminated about three months later. *Id.*

### B.    Procedural Background

Plaintiff appealed his removal to the Merit Systems Protection Board ("MSPB"), which according to plaintiff, "failed to timely adjudicate" his case. SAC ¶¶ 46-47. Plaintiff then filed suit in this Court alleging eighteen counts of violations of federal law against EPA, the United States, the Department of Justice, and several individuals at EPA. *See* Compl., ECF No. 1. Plaintiff soon after amended that complaint, alleging 21 counts. *Townsend I*, 236 F. Supp. 3d at 290-91; First Am. Compl., ECF No. 35. Defendants moved to dismiss, and this Court granted that motion in large part. *See id.* A single claim, Count One, regarding age discrimination under the Age Discrimination in Employment Act ("ADEA") for plaintiff's constructive demotion (his reassignment to the Senior Advisor position), survived. *See id.* at 320. Plaintiff had also pled

age discrimination due to his termination for Count One, but the Court held that his allegations did not support the termination aspect of his claim, given that plaintiff admitted he "participate[d] in time-and-attendance malfeasance" so there was no plausible inference that "age played a role in his termination." *Id.* at 304-06.

Plaintiff filed a second amended complaint, relying on similar but expanded factual allegations. *See* SAC. Defendants moved to dismiss, which motion the Court granted again in large part. *See Townsend v. United States* ("*Townsend II*"), 282 F. Supp. 3d 118 (D.D.C. 2017). Plaintiff's Counts I and II survived this time, with Count I again limited to age discrimination for the constructive demotion, *id.* at 127 & n.4. Count II involved EPA's engagement in a "pattern or practice" of age-based disparate treatment, and the new allegations in the SAC "nudge[d] the plaintiff's claim into the realm of the plausible." *Id.* at 127-28.

Defendants moved for summary judgment on those claims in 2019. That motion was granted. *See Townsend III*, 2019 WL 4060318, at *16. Plaintiff appealed the judgment, and the D.C. Circuit remanded three years later, upon the parties' joint motion for reversal and remand, in light of new case law changing the standard for anti-discrimination claims. *See* Notice of Appeal, ECF No. 83; D.C. Cir. Order, ECF No. 85-1 (citing *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022)); Joint Status Report, ECF No. 87. On remand, the parties agreed that Count I should proceed to trial if the parties could not reach a settlement, but plaintiff did not intend to pursue Count II further. *See* Joint Status Report.

The Court issued a scheduling order and set a date for a bench trial, despite plaintiff's request for a jury trial. *See* Min. Order (Oct. 20, 2022). Plaintiff appealed the decision regarding a bench trial, and the matter was stayed pending that appeal. *See* Min. Order (Feb. 21, 2023). The D.C. Circuit dismissed the appeal for lack of jurisdiction, *see* D.C. Cir. Order, ECF No. 94-

1, but this case was once again stayed before this Court pending the Supreme Court's decision in

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), *see* Min. Order (Nov. 16, 2023).  After that

decision, defendants pointed to a different new decision, *Seed v. EPA*, 100 F.4th 257 (D.C. Cir.

2024), that, in their view, was dispositive in this case.  *See* Defs.' Status Rep. at 3-5, ECF No.

103.  Specifically, under *Seed*, the Court should not reach the merits but rather dismiss for lack

of jurisdiction.  *Id*.

Defendants then filed a motion to dismiss the sole remaining claim, Count I (with respect

to the constructive demotion) for lack of jurisdiction due to lack of redressability.  *See* Defs.'

MTD, ECF No. 106.  Plaintiffs opposed.  Pls.' Opp'n, ECF No. 107.

## II.    LEGAL STANDARD

Federal courts have "limited jurisdiction" and possess "only that power authorized by

Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v.*

*Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  They have an "affirmative obligation 'to

consider whether [such] authority exist[s] . . . to hear each dispute.'"  *James Madison Ltd. ex rel.*

*Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*,

974 F.2d 192, 196 (D.C. Cir. 1992)).  The court must dismiss "at any time" a case over which it

lacks subject matter jurisdiction.  FED. R. CIV. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500,

506-07 (2006).  Accordingly, a party may raise an objection to subject matter jurisdiction "at any

time."  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

One essential element of subject matter jurisdiction is standing.  *See Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff bears the burden to establish that all three

requirements for standing—an injury in fact, a causal connection between the injury and

challenged conduct, and redressability—exist.  *Seed*, 100 F.4th at 260-61.  "[T]he court must

have the power to issue relief that is likely to redress the plaintiff's injury." *Id.* at 263. The

plaintiff must make that showing "with the manner and degree of evidence required at the

successive stages of the litigation." *Id.* at 261 (quoting *Humane Soc'y v. Perdue*, 935 F.3d 598,

602 (D.C. Cir. 2019)).

III.    **DISCUSSION**

In *Seed*, 100 F.4th at 257, the D.C. Circuit considered a claim for age discrimination

premised on a constructive demotion that occurred in the same EPA office from which plaintiff

had been terminated. This claim was nearly identical to plaintiff's claim in Count I.[1] The *Seed*

court held that jurisdiction was lacking because the plaintiff there could not demonstrate that her

harm could be redressed by any available remedy. *See id.* at 266. Likewise here, plaintiff cannot

demonstrate that his injury is likely to be redressed and thus lacks standing, warranting dismissal

of this case.

To satisfy redressability, a plaintiff must show that his injury will "likely . . . be redressed

by a favorable decision." *Id.* at 260 (quoting *Lujan*, 504 U.S. at 560-61); *Abulhawa v. U.S. Dep't*

*of Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017) ("The key word is likely . . ., and thus the

prospect of obtaining relief from the injury as a result of a favorable ruling cannot be too

speculative." (internal quotation marks and citation omitted)), *aff'd,* No. 17-5158, 2018 WL

3446699 (D.C. Cir. June 19, 2018). "The starting point in the redressability analysis is

necessarily the relief sought." *Abulhawa*, 239 F. Supp. 3d at 36. Plaintiff here has requested

reinstatement, front pay, back pay, and compensatory damages, as well as any other damages and

relief as would be just. *See* SAC at 18. Just as in *Seed*, however, none of those remedies—or

any other remedy under the ADEA—is available. *See Liu v. Georgetown Univ.*, No. 22-cv-157

---

[1]    Plaintiff in *Seed* was represented by the same counsel as in the instant case.

(RDM), 2024 WL 4362128, at \*13 (D.D.C. Sept. 30, 2024) ("A plaintiff lacks Article III standing to pursue an ADEA claim where the statute does not provide any remedies."), *reconsideration denied*, No. 22-cv-157 (RDM), 2024 WL 5316247 (D.D.C. Dec. 12, 2024).

First, to be eligible for reinstatement or front pay, a plaintiff must have experienced wrongful discharge. *Seed*, 100 F.4th at 264 ("Wrongful discharge, either actual or constructive, is 'a necessary element of a claim for reinstatement.'" (quoting *Taylor v. FDIC*, 132 F.3d 753, 767 (D.C. Cir. 1997))). In other words, for an age discrimination claim, "the plaintiff must show that age discrimination was the but-for cause of the discharge." *Steele v. Mattis*, 899 F.3d 943, 945 (D.C. Cir. 2018). Here, however, plaintiff was discharged due to his involvement in a fraud. *See Townsend III*, 2019 WL 4060318, at \*1 n.1 ("[A]ll claims related to the plaintiff's termination were dismissed because, in light of his fraudulent activity . . ., 'an inference that age played a role in his termination . . . is rendered implausible.'" (second alteration in original) (quoting *Townsend I*, 236 F. Supp. 3d at 305)). Consequently, he was not wrongfully terminated and is not entitled to reinstatement or front pay. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361-62 (1995) (holding that generally "neither reinstatement nor front pay is an appropriate remedy" where the "employee has engaged in wrongdoing" because the employer would terminate that employee "in any event and upon lawful grounds").

Second, "a backpay award consists of 'the difference between what the employee would have earned but for the wrongful discharge and [her] actual interim earnings.'" *Seed*, 100 F.4th at 264 (alteration in original) (quoting *Oil, Chem. & Atomic Workers Int'l Union v. NLRB*, 547 F.2d 598, 602 (D.C. Cir. 1976)). Plaintiff is not eligible for backpay because plaintiff did not suffer wrongful discharge, and the four-day job reassignment prior to discharge did not result in any reduction in pay or benefits, as this Court previously found. *See id.* (reaching the same

conclusion for plaintiff there); *Townsend III*, 2019 WL 4060318, at \*6 ("[T]he plaintiff's reassignment did not change his job series or pay grade, nor did it reduce his pay, benefits, or working hours.").  As defendants explain, "[e]ven if [p]laintiff could establish liability for his reassignment, the difference between what [p]laintiff *would* have earned but for his reassignment and what plaintiff *did* in act earn during his four-day reassignment is zero.").  Defs.' MTD at 11.

Third, compensatory damages are not available under the ADEA.  In *Seed*, the Court rejected an argument that the ADEA waived the United States' sovereign immunity to allow for compensatory damages.  *See Seed*, 100 F.4th at 265-66.  Plaintiff therefore cannot receive such relief here.

No other relief under the ADEA is apparent.  Plaintiff has not requested declaratory or injunctive relief, *see* SAC, nor would any be proper considering that "there is no record evidence that" plaintiff "plans to return to EPA" or even that he could feasibly do so, considering his termination for-cause, "so no 'present harm [is] left to enjoin.'"  *Seed*, 100 F.4th at 265 (alteration in original) (quoting *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)).  Plaintiff is therefore left with no viable remedy and thus his remaining claim, Count I (with respect to the constructive demotion), lacks redressability.

Plaintiff offers no coherent argument to the contrary.  Indeed, plaintiff offers no affirmative argument about how he can satisfy redressability, nor does plaintiff persuasively rebut any of defendants' points.  Plaintiff seems to take issue with the holding in *Seed* but that decision is binding on this Court, and plaintiff makes no argument to distinguish it, merely insisting that it is "unrelated."  *See* Pls.' Opp'n at 2 n.1, 3; Pls.' Mem. in Supp. of Opp'n at 2, 8, ECF No. 107-1 (describing the defendants' argument as an "absurd redressability tactic" and dismissing it perfunctorily because "even if *Seed* were applicable here (it is not), . . . Plaintiff has

7

easily established" redressability under *Lujan*); *id.* at 4 n.3 ("Standing is a relatively simple concept to understand . . . . Injury in fact, causation, and redressability are self evident in this case."). Plaintiff seems to suggest his harm was not merely the constructive demotion itself but also the "disparate treatment" under the ADEA starting from "the time of notification by agency management of reassignment," *id.* at 5, but how this helps plaintiff is unclear. Plaintiff also seems to suggest some impropriety for defendants to raise the issue of sovereign immunity precluding compensatory damages—and a challenge to standing altogether—at this stage in the litigation. *See id.* at 7. As explained, however, issues related to a court's jurisdiction, and therefore concern about the lack of any available remedy, may be raised "at any time." *Henderson ex rel. Henderson*, 562 U.S. at 434.

## IV.    CONCLUSION

For the reasons explained, plaintiff's sole remaining claim in Count I is not redressable. Plaintiff therefore lacks standing and this Court lacks jurisdiction over that claim. Defendants' motion to dismiss, ECF No. 106, is therefore **GRANTED**. An order reflecting this conclusion and closing this case will be filed contemporaneously.

Date: May 20, 2025

_____
**BERYL A. HOWELL**
United States District Judge